## H. B. Schuler v. S. H. Myton *et al.*

1. CONTRACT — *Consideration.* An agreement to do or the doing of that which a person is already bound to do does not constitute a sufficient consideration for a new promise.

2. PROMISE, *Without Consideration.* Plaintiffs subscribed and guaranteed the payment of a sum of money and the conveyance of land on condition that a college should be located upon a certain tract of land, and the defendant, who would be beneficially interested by a location of the college in that vicinity, subscribed and agreed to pay plaintiffs a certain amount of money, provided the college was located on the southwest 40 acres of the tract named in plaintiffs' subscription. The college was located in accordance with the terms of plaintiffs' subscription, but not on the southwest 40 of the tract, as

named in defendant's subscription. After the college appears to have been permanently located, and the plaintiffs' liability had become fixed, they obtained from the defendant a new, oral promise to pay the amount of his subscription, notwithstanding the change of location. *Held,* That the new promise, as it appears from the record to have been made, was without consideration.

### *Error from Cowley District Court.*

ACTION by *Myton* and another against *Schuler,* to recover on a certain subscription. Verdict and judgment for the plaintiffs, at the December term, 1889. The defendant brings the case to this court.

*S. D. Pryor,* for plaintiff in error.

*Peckham & Peckham,* for defendants in error.

The opinion of the court was delivered by.

JOHNSTON, J.: This action was brought by S. H. Myton and A. J. Thompson to recover from H. B. Schuler a subscription of $500 alleged to have been made by him to reimburse Myton and Thompson for money guaranteed and paid by them to secure the location of a college at Winfield. In the early part of 1885, the southwestern Kansas conference of the Methodist Episcopal church determined to locate, build and maintain a college under the auspices and protection of that denomination, for the education of the youth of both sexes, and proposed to locate the college at some city in southwestern Kansas whose citizens would agree by donations of land and money to contribute to the securing of suitable grounds for the college, and to the expense of erecting the same upon such grounds. The committee of the conference to whom was confided the duty of determining the location visited several of the cities, and determined that Winfield was a desirable place at which to locate the college, and invited the citizens to make known to the committee what assistance they would give to secure the location of the college at Winfield. Two sites were proposed — one in the western part of Winfield, and the other in the northeastern portion of the

city—and a contest arose between the parties interested in the real estate surrounding each site to secure the location. In the northeast part of the city was a tract of land known as the Highland Park addition, which was owned by H. B. Schuler, S. H. Myton, and six other persons. These parties were anxious to secure the location upon or near their land, and proposed to contribute land and money for that purpose. Other parties purchased and platted the southeast quarter of section 22, township 32, range 4, which adjoined the Highland Park addition, and was known as the "Dr. W. R. Davis land," and proposed to aid in locating the college. A. J. Thompson, one of the defendants in error, also owned land in that vicinity, and was interested in having the college located northeast of the city. The parties interested in this location held several meetings in order to determine the quantity of land and the amount of money which should be offered to the conference committee. The Highland Park company, of which Myton and Schuler were members, proposed to give 20 acres of land and $2,800 in money toward securing the college. A definite proposition to the committee was required, and A. J. Thompson and S. H. Myton made a written proposition, as follows:

"WINFIELD, KAS., May 25, 1885.

"We, the undersigned, citizens of the city of Winfield, agree that we will pay to the college of the southwestern Kansas conference, if the same shall be located east of the city of Winfield, in Cowley county, Kansas, and on either the Highland Park addition to the city of Winfield in said county, or on the southeast quarter of section 22, township 32, range 4, in said county, the sum of $10,000 in money, and that we will procure and give to said college a good and sufficient deed of general warranty to 20 acres of land in said Highland Park addition, in a solid form and acceptable to the committee of said college whose business it is to locate said college.

"The above proposition is made in consideration of the location of said college at the point above mentioned, and the benefit we derive thereby with this community in general.

"Witness our hands, the day and year first above written.

A. J. THOMPSON.
S. H. MYTON."

In order to enable Thompson and Myton to carry out their proposition, the owners of the Highland Park addition made the following written subscription:

"We, the undersigned, agree to pay S. H. Myton and A. J. Thompson the sums set opposite our respective names when the M. E. college is permanently located in the southwest quarter of the tract of land known as the Dr. W. R. Davis land.

"This subscription is made to enable said Myton and Thompson to make good their guarantee to $10,000 to said institution; payments to be made at such times and in such proportion of each subscription as will equal the one-third thereon, as follows: One-third when the foundation of said college building is completed, one-third when the walls of the first story of said building are completed, and one-third when said building is completed and ready for occupancy. H. D. Gans, $250; Wm. Newton, $350; H. B. Schuler, $500; W. G. Graham, $500; A. B. Graham, $350; J. R. Clark, $100; E. S. Bedillion, $50; B. P. Wood, $100."

The conference determined to locate the college at Winfield, but upon the northwest quarter of the Davis tract of land. This location met the conditions of the proposal made by Thompson and Myton, as their subscription permitted a location on either the Highland Park addition or upon any part of the Davis tract; but the subscription of Schuler and others, for some reason which is not fully explained, did not correspond with that of Thompson and Myton, but was made upon the express condition that the college should be located on the southwest quarter of that tract. There is considerable in the record which tends to show that the intention of all the parties interested must have been to make the subscriptions on exactly similar terms, and that the second subscription was made to reimburse Thompson and Myton for the obligation which they had assumed. The college was built in accordance with the proposition of Thompson and Myton, and they have paid the full amount of their subscription. All of the subscribers who joined with Schuler in the undertaking to reimburse Thompson and Myton have paid their subscriptions, and Schuler alone refuses. He claims that his subscription was reduced

to writing, and definitely provides that the college shall be located on a certain 40 acres of land, and that, as it has been located elsewhere, there is no liability which can be enforced against him. Upon a trial had with a jury, a general verdict was returned against Schuler for the amount of his subscription, and with it answers to special questions submitted were made.

Schuler insists that he is not liable upon his subscription, and while we think there is a strong moral obligation resting upon him to contribute toward the donation, according to the understanding of all the parties, we are reluctantly compelled to sustain his claim, on the record as it now stands. At the numerous preliminary meetings held, the discussion related to securing the location of the college in the northeast part of the city, and there was apparently no contention as to what particular spot in that portion of the city on which it should be built. All the parties interested appeared to be satisfied that it should be built on any part of the Davis tract, or of the Highland Park addition. There was a small grove on the southwest quarter of the Davis tract, and most of the interested parties thought that this place was especially desirable as a location. And it was generally believed that if it was located in that part of the city it would be near this grove. This may account for the naming of the southwest 40 acres in the subscription made by Schuler and others. After it was found that the college had been located on the northwest 40, all appeared to be content, and the Highland Park Company, of which Schuler was a member, conveyed the 20 acres out of the Highland Park addition, as they had agreed to do. Soon a question arose as to the terms of the subscription that had been made, and when both were procured and examined the discrepancy between them was discovered. There is testimony tending to show that Thompson then visited Schuler, and called his attention to the fact that the location mentioned in his subscription was confined to the southwest 40 of the Davis tract, whereas the college had been located on the northwest 40, and requested that the subscription should be changed

to correspond with that of Thompson and Myton and with the understanding of the parties. According to the testimony of Thompson and Myton, Schuler said there was no need to change the written subscription, nor to make a new one; that he would pay the amount which he had subscribed, without reference to the location. It is also shown that it was more advantageous to Schuler and to the Highland Park Company to have it located where it was located than upon the southwest 40, and other testimony also shows that it would have been more advantageous to Thompson and Myton to have had it located on the southwest 40 than the site on which it was located. Schuler denies that there was any subsequent agreement to pay the subscription after the location had been made, and he testifies that he positively refused to pay the subscription from the first, because the location was not in accordance with the terms of the subscription which he had made. The jury found that there was a subsequent agreement, as claimed by Thompson and Myton, but they failed to find that there was any consideration to support that agreement.

If Schuler's liability is to be measured by the written subscription alone, no recovery can be had against him; but it was competent for him to modify that subscription by oral agreement, provided such oral agreement is based upon a sufficient consideration. The want of consideration for the subsequent promise alleged to have been made by him is the turning-point in the case, and that question was raised in the district court on the pleadings, the evidence, the charge of the court, and findings of the jury. If, by reason of the promise made by Schuler, Thompson and Myton did or undertook to do anything beyond what they were already bound to do, it would be a sufficient consideration to sustain the promise of Schuler. It is contended that the record discloses that no liability was incurred nor any act done by Thompson and Myton on the faith of Schuler's promise, and some of the testimony of Thompson himself tends to sustain this claim. It is true that it appears that the $10,000 subscription which they had made was all paid to the college authori—

ties after the making of the subsequent promise by Schuler, and they testify that payment would not have been made except for the promise made by Schuler and his associates. They had, however, made a definite proposition to the committee of the conference, and the acceptance of their offer constituted a binding contract and fixed their liability. They proposed to pay $10,000 in money and give to the college 20 acres of land when the college was located at any point within the Davis tract. When the permanent location was made their obligation was complete, and their liability determined. It is not clear from the record just when the location was made, nor whether the committee first made a temporary location, to enable these guarantors to obtain assistance from others who were supposed to be benefited by the location. If the first location was temporary and conditional, so that Thompson and Myton were not absolutely bound, and if their agreement was completed and carried out on the faith and credit of the subsequent promise of Schuler and his associates, there would be a valid consideration to support the promise of Schuler. On the other hand, if the undertaking of Thompson and Myton had become complete and binding before the subsequent promise of Schuler was made, and no new liability was created, and they paid nothing more than what they had prior to that time contracted to pay, the promise would not be enforceable. It is well settled that an agreement to do or the doing of that which one is already bound to do does not constitute a consideration for a new promise. (*Vanderbilt v. Schreyer*, 91 N. Y. 392; *Geer v. Archer*, 2 Barb. 420; *Crosby v. Wood*, 6 N. Y. 369; *Bartlett v. Wyman*, 14 Johns. 260; *Ayers v. Railroad Co.*, 52 Iowa, 478; *Reynolds v. Nugent*, 25 Ind. 328; *Deacon v. Gridley*, 15 C. B. 295; see, also, *University v. Livingston*, 57 Iowa, 307; *Hamilton College v. Stewart*, 1 N. Y. 581; *Trustees v. Gilbert*, 2 Pick. 578; 2 Pars. Contr. 437; Pollock, Contr. 161; 3 Am. & Eng. Encyc. of Law, 834, and cases cited.) In the present case, the jury found, as has been stated, that the subscription of Schuler was modified by a subsequent promise, whereby he orally

agreed to pay the full amount of $500, but the following questions and answers show the consideration to be insufficient:

"What action, if any, did the plaintiffs take by reason of such subsequent promise of defendant which they would not have taken if such subsequent promise had not been made? A. Fulfilled their agreement.

"What liability, if any, did the plaintiffs incur by reason of such subsequent promise which they had not already incurred prior to the making of such subsequent promise? A. Plaintiffs advanced the subscription of defendant, $500."

The fulfilling of their agreement and the payment of the money which they had already contracted to pay would not constitute a legal consideration for the promise of Schuler. Although the testimony in regard to the consideration is not clear or satisfactory, there is sufficient upon which to base these findings. Thompson himself testifies that he would have been required to pay his subscription without reference to the subscription of Schuler or the carrying out of the subsequent promise which he had made. These findings are inconsistent with the general verdict, and for this reason, and the further one that the charge of the court did not fairly present to the jury the rule of law, that the agreement to do or the doing of that which a person is under a legal obligation to do is not a sufficient consideration for a new promise, there must be a new trial.

For this purpose the judgment of the district court will be reversed.

All the Justices concurring.