## McDevitt v. Stokes.

(Decided March 9, 1917.)

### Appeal from Fayette Circuit Court.

1. Contracts—Action on Promise of Third Persons.—Where a person has, by his own contract of employment to another, become. morally and legally bound to do an act, he cannot maintain an. action on the promise of a third person, afterwards made, to pay. him for doing it.

2. Contracts—Consideration.—There is no consideration for a promise, where no benefit is conferred on the promisor nor detriment suffered by the promisee.

J. G. DENNY and GEO. C. WEBB for appellant.

MAURY KEMPER and H. E. ROSS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Affirming.

In this action instituted by the appellant, Mike McDevitt, in the court below he sought to recover of the appellee, W. E. D. Stokes, the sum of $800.00 alleged to be the balance due him of a $1,000.00 claim which appellee agreed to pay him in the event he won with a mare called "Grace," to be driven by him, the celebrated Kentucky Futurity race of the Kentucky Trotting Horse Breeders Association at Lexington, in October, 1910. In the opinion of the circuit court the facts alleged in the petition did not show a consideration sufficient to support the agreement on the part of appellee to pay the $1,000.00, for which reason the general demurrer filed by the latter to the petition was sustained. The appellant declining to plead further, the petition was dismissed, and from the judgment entered in conformity to these rulings, he prosecutes this appeal.

The facts constituting appellant's cause of action, fully set forth in the petition, are substantially as follows: At the trotting meeting of the Kentucky Trotting Horse Breeders Association, held at the city of Lexington, in October, 1910, the mare "Grace," owned by one Shaw, was entered in the Kentucky Futurity race, to be driven by the appellant, McDevitt, a driver of great skill and experience, who was then in Shaw's employ. The Kentucky Futurity race is one of the most noted races among trotting horsemen in the United States and the winning of it greatly increases the value of the win-

ning horse and also the value of the sire, dam, brothers and sisters of the winner. The purse offered in the race in question was $14,000.00, to be divided as follows: To the winner, $10,000.00; to the second horse, $2,000.00; to the third horse, $1,000.00; to the fourth horse, $500.00; to the owner of the dam of the winner, $300.00; to the owner of the dam of the second horse, $100.00; to the owner of the dam of the third horse, $75.00; to the owner of the dam of the fourth horse, $25.00. At the time this race occurred, and for some years prior thereto, the appellee, Stokes, controlled and managed a large stock farm near Lexington, together with a number of valuable race horses, bred and reared thereon, and had formed, for operating the business, a corporation known as the "Patchen Wilkes Stock Farm," of which he owns practically all the stock and is the president and manager. Among the horses then owned by this corporation was "Peter the Great," the sire of the mare "Grace," "Orianna," her dam, "Vladimir," a yearling, and "Kilpatrick," a colt, her full brothers. As appellee named the mare "Orianna" as the dam of "Grace," entered to win the Kentucky Futurity race, he, or the corporation of which he is president, was entitled, in the event of the latter's winning it, to receive $300.00 out of the purse of $14,000.00, going to the winner. In addition, the value of each of the four horses, "Peter the Great," "Orianna," "Vladimir" and "Kilpatrick," owned by the corporation of which he is president, would be greatly increased by "Grace" winning the race. It is alleged in the petition that, influenced by the foregoing considerations, appellee agreed to pay appellant the sum of $1,000.00 if he would drive and win the Kentucky Futurity with the mare "Grace," to which the latter agreed, drove the mare and won the race; that by reason thereof, appellee, or the corporation of which he is president, received, of the $14,000.00 purse won, $300.00, as the owner of "Orianna," the dam of "Grace," and the value of "Peter the Great," the sire of "Grace," was increased $10,000.00; that of "Orianna," her dam, $5,000.00, and that of "Vladimir" and "Kilpatrick," her brothers, $5,000.00 each.

It is insisted for appellant that the above enumerated benefits received by appellee from the winning of the trotting race by the mare "Grace," which resulted in large measure from his skill in driving her, constitutes

a sufficient consideration for the promise and undertaking of appellee to pay him the $1,000.00. This contention ignores consideration of another element of the alleged contract between the parties which, in our minds, is conclusive of its invalidity, viz.: That appellant, because of his employment by Shaw, the owner of the mare "Grace," was already both morally and legally bound to perform the service required of him by the alleged contract he made with appellee; hence, its performance, as legally required by his contract with Shaw, would inevitably have resulted in the benefits received by appellee, in the absence of the alleged contract made by the latter to pay therefor. To hold that appellant would not have won the race with "Grace" but for the agreement of appellee to pay him the $1,000.00 if he would do so, would be to say that he would have been recreant to the obligation arising out of his employment by Shaw, an inference not justified by anything appearing in the petition.

We find no fault with the argument of appellant's counsel that a consideration which is either of benefit to the promisor or detrimental to the promisee, will be regarded sufficient to uphold the contract between the parties; nor are we inclined to depart from any principle announced in the cases of Talbott v. Stemmons, 10 R. 33; Ryan v. Tribble, 22 R. 1447; Moayon v. Moayon, 114 Ky. 864; Van Winkle v. King, 145 Ky. 693; First State Bank, &c. v. Morton, 146 Ky. 293; Shadwick v. Smith, 147 Ky. 160; relied on in the brief of counsel. The contracts discussed and passed on in those cases rest upon no such facts as are presented by the contract in the instant case, nor do they, or any of them, conflict with the conclusions at which we have arrived.

It will be found from an examination of those cases that the benefit resulting to the promisor, constituting the consideration of the contract, was some legal right acquired of the promisee by the promisor to which he would not otherwise have been entitled; or that the detriment resulting to the promisee, constituting the consideration of the contract, was the waiver or loss of some legal right in return for the promise he would otherwise have availed himself of. Our meaning will be better explained by the following excerpt from Page on Contracts, Volume 1, section 274, in which the author, in discussing the meaning of the words "valuable consideration," says:

"The use of 'benefit' and 'detriment' in this connection needs explanation. While correct if properly understood, it is liable to misconstruction. 'Benefit' does not refer to any pecuniary gain arising out of the transaction, nor 'detriment' to any pecuniary loss. It is not possible to wait until the transaction is concluded and the books balanced, to see whether the consideration existed originally. 'Benefit' as used in this rule means that the promisor, has, in return for a promise, acquired some legal right to which he would not otherwise have been entitled; 'detriment' means that the promisee has, in return for the promise, forborne some legal right which he would otherwise have been entitled to exercise."

In Clark on Contracts (Second Edition) pages 106-107, sections 61 and 62, it is said:

"Section 61. Consideration is that which moves from the promisee to the promisor, at the express or implied request of the latter, in return for his promise. . . . .

"Section 62. As the term is used in the law of contracts, it means a 'valuable' consideration; that is something having value in the eye of the law. Consideration means that which moves from the promisee to the promisor at the latter's request in return for a promise. Consideration, however, need not be the payment of money. It may consist in some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other; provided, however, the benefit conferred or detriment suffered is deemed of value in the eye of the law."

The controlling feature which distinguishes the instant case from those, *supra,* relied on by appellant's counsel, is that what the appellant claims he undertook to do in return for the appellee's promise to pay him the $1,000.00, was a thing or act he was already under a legal obligation to perform, regardless of the promise made by the appellee. This puts the case clearly within the rule stated in Elliott on Contracts, section 215, as follows:

"Neither the promise to do, nor the actual doing, of that which the promisor is by law or subsisting contract, bound to do, is a sufficient consideration to support a promise made to the person upon whom the legal li-

ability rests either to induce him to perform what he is bound to do or to make a promise so to do."

In 9 Cyc., page 312, the same doctrine is thus stated:

"There is a consideration if the promisee, in return for the promise, does anything legal which *he is not bound to do,* or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor, or not."

Again in 9 Cyc., 316, it is, on the same subject, said:

"On the other hand, there is no consideration for a promise where no benefit is conferred upon the promisor nor detriment suffered by the promisee, and the promisor neither undertakes to do anything which he is not bound to do nor forbears to do anything which he has a right to do."

In the same volume at page 347 it is said:

"A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise, but that to which he is already legally entitled, the consideration is unreal. This legal obligation may arise from: (1) the law independent of contract, or it may arise from (2) a subsisting contract. . . . . Where a party is under duty created or imposed by law to do what he does, or promises to do, his act or promise is clearly of no value and is not a sufficient consideration for a promise given in return."

Obviously, the rule stated must obtain where the promise is made by a third party to induce the promisee to carry out an existing contract which he has with another. Indeed, this was declared to be the law by this court as far back as 1822 in Ford v. Crenshaw, 1 Littell 68, doubtless the first case involving the question decided in this jurisdiction. Instead of reciting the voluminous facts or commenting upon the opinion, we here give the conclusions reached by the court which are correctly and with admirable clearness expressed in the first paragraph of the syllabus, as follows:

"Where a man has, by his own contract, become morally and legally bound to do an act, he cannot maintain an action on the promise of a third person afterwards made to pay for doing it."

The foregoing statement of the law finds support in the following additional cases: Eblin v. Miller's Executor, 78 Ky. 371; Trundle's Admr. v. Riley, 17 B. Mon.

396; Riley v. Grace, 17 R. 1007; Marking v. Needy and Hatch, 8 Bush 22; Foxworthy v. Adams, 136 Ky. 403; Shackelford v. Handley's Executors, 1 A. K. Marshall 370.

In Eblin v. Miller's Executors, *supra,* the distinction between an actual benefit and a legal benefit is aptly shown. Eblin, a tenant of Miller, having complained to him that a stairway of the leased premises was out of repair and threatened to surrender his lease and abandon the premises before the end of the term, unless Miller would repair the stairway, the latter promised him if he would continue as his tenant to the end of the term, he (Miller) would have the stairway repaired, which he did. After the making of the repairs, however, Eblin, on account of the giving way of the banisters, fell from the stairway and was injured. After the death of Miller, Eblin brought suit against his executors to recover damages for the injuries caused by his fall from the stairway, alleging in the petition that his injuries resulted from the failure of Miller to properly repair the stairway as promised. In the absence of a contract to repair the leased premises the law imposes no duty upon the landlord to repair the same. As no such contract was made between Eblin and Miller before or when the former began his tenancy, he was bound, as tenant, to retain possession of the premises during the term whether the landlord made needed repairs thereon or not, but the only promise on the part of Miller to make repairs was after the beginning of the term and based alone on the agreement of the tenant to relinquish his expressed purpose to abandon them before the end of his term. Upon the state of case presented, it was held: (1) A mere promise by a landlord to repair the demised premises before the tenant's term expires, upon the agreement that he will not abandon the property is without consideration, and cannot be enforced. (2) As the tenant was bound to retain possession of the premises for the current month, without an agreement to continue his tenancy for a longer time, the case fell within the rule stated. (3) That the landlord agreed to have repairs made by a person regularly employed by him to repair his houses, and that this person did the work unskillfully, did not aid the petition without an averment that he was unskillful, the agreement being gratuitous.

It is apparent from the facts alleged in the petition and the application to them of the principle announced by the authorities, *supra,* that the petition fails to state

a cause of action against appellee. The latter was, it is true, benefited by the winning of the Kentucky Futurity purse by the mare "Grace," driven by appellant, but the benefit was purely incidental and one to which he was entitled regardless of appellant's undertaking with him to win the race or of his, appellee's, promise to pay him the $1,000.00 if he would do so. As appellant under his contract with his employer, Shaw, was in duty bound to do what he claims appellee agreed to pay him to perform, it is evident that he neither assumed any added responsibility nor sustained any loss by reason of his undertaking with appellee that he would cause the mare "Grace" to win the race; and no liability was legally imposed upon appellee by his promise to pay him for the service rendered.

This conclusion makes it unnecessary for us to decide whether the contract was contrary to public policy; hence, that question is not passed on. It follows from what has been said that the action of the circuit court in sustaining the demurrer was not error. Wherefore, the judgment is affirmed.