UNITED STATES FIDELITY & GUAR-
ANTY CO. v. CRAIS

---

(April 7, 1930. Opinion and Decree.)
(June 16, 1930. Rehearing Refused.)
(July 19, 1930. Writ of Certiorari and Re-
view Refused by Supreme Court.)

---

Spearing & Mabry, of New Orleans, at-
torneys for plaintiff, appellee.

Harold A. Moise, of New Orleans, attor-
ney for defendant, appellant.

HIGGINS, J.   Plaintiff sues defendant
for $500 on a contract alleged to have been
entered into between the parties on May
13, 1925.   Defendant admitted his signa-
ture, but denied liability for want of valid
or legal consideration.   There was judg-
ment in favor of the plaintiff as prayed
for, and defendant has appealed.

The pertinent part of the contract reads
as follows:

"May 13, 1925.
"In consideration of the discharge by the
United States Fidelity & Guaranty Co. of
its liability to the Canal Commercial Trust
& Savings Bank of New Orleans, as surety
for and on account of J. E. Johnson, Mana-
ger of the LeBreton Market Branch of the
Canal Commercial Trust & Savings Bank
of New Orleans, the undersigned bind and
obligate themselves to pay to the United
States Fidelity & Guaranty Co. the amount
set opposite their respective names, or so
much thereof as may be necessary to re-
fund and reimburse the said company for
any loss, damage or expense resulting from,
and growing out of the bond herein above
referred to, subject however, to the follow-
ing conditions and provisions, to-wit:

"1st.   "The amount of liability of the
United States Fidelity & Guaranty Company
shall be ascertained by an audit of the
books of said bank for a period not ex-
tending beyond the term of employment of
said Johnson, which audit is to be made in
the presence of said Johnson.'"

The agreement also contains other provisions providing for the surrender by Johnson of certain movable and immovable assets to the plaintiff to make restitution for the loss. All of the conditions of the contract have been fulfilled, except the payment by defendant of the sum of $500, which he agreed to pay to the plaintiff under the terms and provisions of the contract.

The sole question before the court is whether or not the contract is supported by a valid consideration.

The record shows that Johnson was employed by the Canal Commercial Trust & Savings Bank as manager of one of its branches. It was discovered that he was short in his accounts in a sum estimated to be over $30,000, due to overdrafts and acts of embezzlement by him.

The plaintiff, in consideration of a certain premium, had issued a blanket bond, or insurance policy, covering all of the employees of the Canal Commercial Trust & Savings Bank in favor of the bank protecting it against loss from dishonesty, embezzlement, etc., by its employees. When Johnson's misappropriation of the bank's funds was discovered, he desired to avoid criminal prosecution and adverse publicity, and therefore called for a meeting between his friends and the officers of the plaintiff company to see what could be done. At the meeting there were the officers and attorneys of plaintiff, Johnson and his attorney, and a number of Johnson's friends. Johnson's idea was that, if he could make restitution, there should be no criminal prosecution or publicity of his dishonesty. He proposed a surrender of all of his property and assets to be applied against his shortage, which the plaintiff was required to pay the Canal-Commercial Trust & Savings Bank under the blanket bond, or insurance policy whereby the bank was guaranteed or insured against any loss as a result of embezzlement, or dishonesty, etc., of its employees, and the remaining amount, if any, shown by an audit, would be paid by his friends. Johnson insisted that a provision be placed in the contract that, in consideration of complete restitution, the plaintiff would agree that there would be no criminal prosecution and adverse publicity. The attorneys for the plaintiff pointed out that the matter of criminal prosecution was entirely with the district attorney representing the state of Louisiana, and refused to agree to such a proposition. After several drafts of the proposed agreement between plaintiff and the friends of Johnson, the agreement sued upon was finally confected and signed by plaintiff and the friends of Johnson for the amount set opposite their names.

Johnson surrendered all of his assets, which the plaintiff used to liquidate its loss, amounting to $39,589.01. However, the assets of Johnson were not sufficient to cover the loss in full, and plaintiff then called upon the respective signer of the contract to pay the amounts for which they had bound themselves in the agreement. It appears that some of the parties paid, but some did not, and three separate suits were entered against these parties in the civil district court. The cases were separately tried by different divisions of the civil district court, and are now on appeal in this court, but they have not been consolidated. This is the first case argued and submitted.

Plaintiff concedes that a contract for restitution, supported only by the consideration not to criminally prosecute for embezzlement, is against public policy and is illegal, null, and void, but contends that the contract between itself and the Canal-

Commercial Trust & Savings Bank was one of suretyship and that, upon payment of the loss to the bank, the surety was subrogated by law to the rights of the bank against the embezzler, and therefore had the right to enter into any agreement for the settlement of its civil loss with Johnson and his friends, and hence the agreement was supported by a valid consideration.

Defendant contends that the contract between the plaintiff and the bank was one of insurance, because Johnson was never a party to it and that, before there could have been a contract of suretyship, Johnson would have had to be a principal; that, since Johnson was not a party to the contract, the contract could only be one of insurance, and hence the plaintiff did not have any right of subrogation against the defaulter Johnson, and that, as the plaintiff was legally bound to pay the bank under its blanket policy of insurance, in paying the bank the loss it was only doing what it was already legally obligated to do; that therefore the contract between the plaintiff and the defendant was without any valid consideration, as Johnson and the defendant did not receive any benefit from the contract and plaintiff neither suffered any detriment nor gave up any right whatsoever.

If the contract between the bank and the plaintiff be one of suretyship, then the plaintiff was subrogated to the rights of the bank against Johnson. R. C. C. arts. 3052, 3053, 2160, 2161. In the case of Curtis vs. Kitchen, 8 Mart. (O. S.) 706, it was held that the surety who pays the debt is subrogated ipso facto.

If the contract between the bank and the plaintiff was one of insurance, then it appears that the plaintiff would not be subrogated to the bank's rights against Johnson. In the case of Carroll & Co. vs.

N. O., J. & G. N. R. Co. et al., 26 La. Ann. 447, the plaintiff insurance company insured a shipment of cotton against loss by fire. The cotton was destroyed by fire during transit. The insurance company paid the loss and sought reimbursement from the railroad. The court said:

"The question here is, whether the insurance company can recover its loss from the railroad company? We think not. There was no contract between the two companies; consequently there was no obligation from the one to the other. There was no conventional subrogation from the assured to the assurers, and there was certainly no legal subrogation by which payment by the one entitled them to payment from the other. The insurance company paid the loss for which they received a premium for insuring against to the persons who suffered the same. As there was no contract between it and the railroad company, and as no obligation existed towards them from the railroad company, they have no claim against it."

The contract between the bank and the plaintiff is not in the record, and we are therefore unable to determine whether it was one of insurance or suretyship. However, we do not believe that it is necessary to determine whether the contract was one of suretyship or insurance, because we do not believe that would make any legal difference in arriving at a decision.

Under the law it appears that the motive for entering into a contract is immaterial so long as it is supported by legal or valid consideration. In the case of Benner vs. Van Norden et al., 27 La. Ann. 473, it was said (syllabus):

"The motives which influence a person to exercise a legal right do not destroy that right or affect its enforcement."

Therefore, even if the sole motive of the friends of Johnson entering into the contract with plaintiff was to prevent criminal

prosecution of him, if the contract is supported by valid and legal consideration, it would be binding. Was the contract supported by a valid and legal consideration?

In the case of Benner vs. Van Norden et al., supra, the Supreme Court cited with approval the definition of "consideration" given by Mr. Story in his work on Promissory Notes in the following language:

" * * * A valuable consideration may, in general terms, be said to consist either in some right, interest, profit, or benefit accruing to the party who makes the contract, or some forbearance, detriment, loss, responsibility or act, or labor or service on the other side; and if either of these exist, it will furnish a sufficient valuable consideration to sustain the making or indorsing of a promissory note in favor of the payee or other holder."

In Corpus Juris, vol. 13, verbo "Contracts," par. 144, p. 311, the definition of consideration is given as follows:

"A benefit to the party promising, or a loss or detriment to the party to whom the promise is made. 'Benefit' as thus employed, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. And 'detriment' means that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise."

It has been uniformly held that a promise to perform an existing contractual obligation to a third person, or the performance of it does not constitute a valid and legal consideration. Johnson vs. Seller, 33 Ala. 265; Harris vs. Harris, 9 Colo. App. 211, 47 P. 841; Merrick vs. Giddings, 1 Mackey (12 D. C.) 394; Havana Press Drill Co. vs. Ashurst, 148 Ill. 115, 35 N. E. 89, Schuler vs. Myton, 48 Kan. 282, 29 P. 163; McDevitt vs. Stokes, 174 Ky. 515, 192 S. W. 681, L. R. A. 1917D, 1100; Putnam vs. Wood-

bury, 68 Me. 58; Arend vs. Smith, 151 N. Y. 502, 45 N. E. 872; Corpus Juris, vol. 13, verbo "Contracts," par. 209, p. 352.

In the case of Monroe Inv. Co., Ltd., vs. Ford, 168 La. 475, 122 So. 586, 587, the Supreme Court of this state said:

"But 'a promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal.' Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation, is not a valid consideration.' 13 Corp. Jur. 351 (Contracts) sec. 207."

Let us next determine how this principle of law would affect the present case. The record shows that the plaintiff company was bound either by bond or policy of insurance to indemnify the bank against any loss which it might sustain through the dishonesty of its employees. While this contract between the bank and the plaintiff was in existence and supported by a valid consideration, the premium paid for this protection, Johnson, one of the employees of the bank, embezzled money, causing a loss to the bank. Plaintiff then became indebted to the bank for the amount of the loss that the bank sustained through the dishonest acts of Johnson. This amount, at the time the defalcation was discovered, was indeterminate or approximate, but could be ascertained to a mathematical certainty by an audit of the bank's books and records. The bank, whether the contract between itself and plaintiff was one of insurance or surety, would have to determine the extent of its loss and make satisfactory proof that such loss was sustained. With this legal contractual obligation and debt upon the plaintiff under the contract of suretyship, or insurance, with the bank, the plaintiff, on May 13, 1925, en-

tered into the agreement in question with the defendant. It is obvious that the defendant did not secure any benefit from this contract. It is likewise clear that Johnson did not secure any benefit from it, unless it could be said that he was not criminally prosecuted, but such a consideration would be contra bonos mores, and therefore the contract would be invalid. Did the plaintiff give up any legal right which it might have had under its contract of insurance or suretyship with the bank, as a result of entering into the contract with the defendant on May 13, 1925? We believe not. Under the very provisions of the contract of May 13, 1925, the plaintiff owed the defendant the duty of not paying the bank one single penny for which it was not liable under its contract of insurance or suretyship with the bank. The plaintiff therefore did not waive any legal right which it had as a defense to the payment of any loss which the bank may have sustained as a result of Johnson's dishonest act because of the contract of May 13, 1925. If the plaintiff had any defense against the bank as to its claim, then, under the very provisions of the contract between the plaintiff and the defendant, it was the duty of the plaintiff to have resisted any claim or action that might have been made or brought against plaintiff by the bank. If the plaintiff did not owe the bank anything, then, necessarily, the defendant would not owe the plaintiff anything; but, if the plaintiff owed the bank the amount of its claim, then it was an obligation that had already come into existence under a previous contract at the time the defendant entered into the contract with the plaintiff on May 13, 1925. The very beginning of the contract specifically says:

"In consideration of the discharge by the U. S. Fidelity & Guaranty Company of its liability to the Canal-Commercial Trust & Savings Bank of New Orleans," etc.

We therefore believe that there was a failure of a valid or legal consideration, unless it can be said that the plaintiff was subrogated as a surety to the rights that the bank had against Johnson, and that the consideration for the defendant's contract was the promise to pay the debt of a third person. The record shows that Johnson was not discharged or released from his obligation or any part of it when the defendant signed the contract sued upon, and hence plaintiff did not surrender any legal right which it might have had against Johnson. If plaintiff had released Johnson, then the situation might be different.

For the reasons assigned, the judgment of the district court is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of Gustave H. Crais, defendant, dismissing plaintiff's suit at its cost.

JANVIER, J. (dissenting).

The surety company could have refused to settle with the assured for Johnson's shortage until receipt by it of full proof in the usual form.

Johnson's friends, including defendant, were interested in prevailing upon the surety to settle with the bank without requiring it to comply with the usual requisites and formalities.

In order to secure this waiver of the usual requirements, defendant, Crais, and the other friends of Johnson signed the document which is now sued on.

I think that full legal consideration was given and received, and therefore respectfully dissent.