### Moore et al. v. Kuster.

(Decided February 20, 1931.)

(As Modified on Denial of Rehearing May 8, 1931.)

HENRY F. TURNER for appellants.

M. C. ANDERSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

Frank Kuster obtained a judgment against Susie Moore, as administratrix of the estate of Henry Moore, for $2,050, with interest from June 1, 1927; Kuster was also adjudged to have a lien on 128 acres of land near La Center in Ballard county, and this land was ordered sold to satisfy that lien. From that judgment Susie Moore, as administratrix, also individually, and Neal Moore, Gaither Moore and Hahs Moore, the children of Henry Moore, have appealed.

In April, 1926, Gaither Moore was convicted in the United States District Court of stealing sugar from an interstate carrier, and under that conviction four fines of $1,000 each and four prison sentences of 5 years each, in the United States Penitentiary at Leavenworth, Kan., were imposed upon him.

Upon the day of his conviction or shortly thereafter, and while he was yet in jail in Cairo, Ill., one Mike Kalish, a professional bondsman, visited Gaither Moore in the jail and contracted with him to procure counsel for him, to make bond for him, and to arrange for an appeal from this judgment of conviction. The evidence shows that for this service Moore was to pay Kalish $2,500. It is shown by the evidence of Gaither Moore, Mrs. Laura Bryant, and Dewey Bryant that Gaither Moore paid $1,600 of this in cash on April 23, 1926, in the presence of the Bryants, and these three testify that

Kalish undertook for $2,500 to do for Gaither Moore the things set out above.

Gaither Moore says he paid all of this $2,500 and more to Kalish. Kalish testified that what he did was done out of friendship only, that Gaither Moore never did pay him a dime, but later in his evidence, when confronted with canceled checks that had been given him by Gaither Moore, his memory improved. He first admitted getting a check for $200, which he was sure was all that was paid him; then, when confronted by a check for $630, his memory again improved, and he recalled the receipt of that money. He also recalled the receipt of $400 from Gaither Moore, and he explained that that was for another purpose. He admitted writing a letter to Gaither Moore on May 17, 1926, at which time Moore was in the penitentiary at Leavenworth. Another letter was written on June 7, 1926, another on June 14, 1926, another on June 24, 1926, and he sent a telegram on June 28th and on July 10, 1926, he sent Moore this letter:

"Mr. Moore, Leavenworth, Kan.

"My dear friend, Moore, Your bond is already signed. I mail it to Judge Lindley in Danville and expect you'll be out Monday July 12. When you get out be sure and come to East St. Louis, Ill., to see me because its very important. You can call me from Depo and I'll get you and tell Dewey that we will work on his bond as soon as you come out. "M. S. Kalish."

This letter shows that the efforts Kalish was making to get Gaither Moore out of prison had succeeded, the other letters showed his interest and activities in that regard, that the authorities had refused to accept Kalish on this bond, and, after they refused to take him, Kalish then saw one Tony Banalo and a friend of the latter mentioned in the letter as "Tom," tried to arrange with them to make the bond, but they did not do so, and, after Gaither Moore got out of prison, he for the first time learned that his bond had been signed by the appellee, Frank Kuster, a man that Moore says he had never seen nor heard of before. He has also learned since that upon this bond on which he was released from prison, Kuster had a cosurety named Walter Gregorvich whom Gaither Moore had never seen

or heard of, and with whom Kuster had had no talk or understanding with when he (Kuster) signed the bond, and whose name Kuster did not learn until later. A narration of these things to the average reasonable man, would result in but one conclusion on his part, and that is that Gaither Moore did pay Mike Kalish $2,500 to make bond for him, employ counsel for him, etc., and that Kalish procured Kuster and Gregorvich to sign this bond. Now begins the second act.

On July 7, 1926, Mary Polacek, Mike Kalish, Rose Kalish, Frank Kuster, and Laura Bryant came to the home of Henry Moore and his wife, Susie Moore, in Ballard county, Ky. Henry Moore was then in feeble health. He had previously sustained a paralytic stroke which had left him practically if not entirely devoid of mentality. Mike Kalish was the director of operations. Kuster remained outside. The rest of the crowd went into the house and induced Henry Moore and Susie Moore to execute to Frank Kuster a note for $6,000 and a mortgage on their home to secure it. At the same time they took from them a side agreement in which the execution of this note and mortgage is recited as having been done under the following conditions:

"That if the said Gaither Moore shall at all times be and appear and perform each and every obligation on his part in the said bond undertaken and if the said Frank Kuster, as surety on said bond shall have incurred or become liable to pay neither the penal sum mentioned in said bond nor any part thereof, then the said note and mortgage shall be null and void and returned to the said Henry Moore and Josie (Susie) Moore, to be cancelled and in other respects released upon the record and destroyed. But otherwise the said note and mortgage shall remain in full force and effect according to the tenor thereof, providing further that the said note and mortgage shall not be negotiable, transferable or assignable in any manner."

On the 21st of February, 1927, Susie Moore qualified as administratrix of her husband, Henry Moore, who had died intestate a few days before, leaving Susie Moore, his widow, and Gaither Moore, Neal Moore, and Hahs Moore, his only children, as his distributees and heirs at law.

On November 1, 1927, Kuster sued Mrs. Moore and these children, Kearney Moore, the divorced wife of Gaither Moore, and Grace Moore, the wife of Neal Moore, upon this note and mortgage, alleging therein a balance due thereon of $2,500.

The evidence conclusively shows that there was no monetary consideration whatever given by Frank Kuster to this old man and his wife for the execution of this mortgage, and the defendants so alleged in their answer, whereupon Kuster amended his petition, set up this side agreement, and pleaded that this was an indemnity mortgage to protect him against possible loss by reason of having signed the bond of Gaither Moore, and that by reason of his said suretyship he had lost and been required to expend $2,500.

When the case was heard the court concluded that the evidence showed Kuster had only been out $2,050 by reason of his suretyship, and the court gave him a judgment for that sum. This record shows Kalish had agreed to make this bond and had been paid for doing so; he could not do so because he was then on so many bonds the authorities would not accept him as a surety on any more. Kuster was brought into the matter by Kalish to do for Kalish what Kalish had contracted to do but had found himself unable to do. Kuster signed this bond on June 21, 1926, and it must be presumed he then received a consideration that was satisfactory to him. Sixteen days thereafter, without doing another thing or incurring any additional liability, he induced Mr. and Mrs. Moore to give him this mortgage, the enforcement of which the Moores are resisting. The Moores have established their defense of no consideration.

> "There is no consideration for a promise where no benefit is conferred upon the promisor nor detriment suffered by the promisee." McDevitt v. Stokes, 174 Ky. 515, 192 S. W. 681, 682, L. R. A. 1917D, 1100.
> "According to the weight of authority in this country a promise to perform an existing contract with a third person or the performance of it does not constitute a valuable consideration." 13. C. J. p. 256, sec. 216; 6 R. C. L. p. 666, sec. 75.

The rule in Massachusetts is otherwise as to the consideration for the promise of third parties, see Abbott v.

Doane, 163 Mass. 433, 40 N. E. 197, 34 L. R. A. 33, 47 Am. St. Rep. 465; but even in that jurisdiction it is held there is no consideration for the third party's promise in so far as it relates to matters already done, see Rand v. Mather, 11 Cush. (Mass.), 59 Am. Dec. 131.

The judgment is reversed, with directions to dismiss the petition.