# Luigart v. Federal Parquetry Manufacturing Company.

### (Decided March 17, 1922.)

## Appeal from Fayette Circuit Court

1. Contracts—Consideration.—A benefit to the party promising or a loss or detriment to the party to whom the promise is made is a sufficient consideration to support a contract.

2. Landlord and Tenant—Contract—Consideration.—An agreement by the tenant to allow his machinery, which he had the right to remove, to remain installed in the leased premises for sixty days after the expiration of the lease, to enable the landlord to sell or rent the building as an equipped manufacturing plant, is sufficient consideration to support the contract, which also provides that it shall be construed as fixing and limiting all rights and obligations of the parties under previous contracts; and such contract is not contrary to law or public policy.

3. Landlord and Tenant—Expiration of Contract—Rent.—By reason of such contract which does not provide for payment of rent by the former tenant for the period he was to and did permit his machinery to remain in the premises, he was not liable for rent or for damages under the expired rental contract.

4. Contracts—Ambiguity—Parol Evidence.—Parol evidence admitted to explain latent ambiguity in written contract, when no such ambiguity exists, is incompetent, but its admission was not prejudicial where it simply confirmed as the intention of the parties the express provisions of the contract.

WM. C. G. HOBBS for appellant.

J. PELHAM JOHNSTON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On March 23, 1914, appellant leased to appellee for a term of years certain premises in Lexington, together with the machinery therein. The lessee took possession and on May 12, 1917, the parties executed a new contract, modifying the original one so that as modified it provided among other things that the lessee should pay rental at the rate of $100.00 per month; that it could terminate the lease on June 1, 1919, by giving notice prior to May 1, 1919, and that if the contract was so terminated the lessee could remove any machinery that it had installed, but that it must make any repairs occasioned thereby and that in any event it should pay for any damages to lessor's building or machinery occasioned by its negligence.

In April, 1919, the lessee gave notice of its intention to terminate the lease and vacate the premises on June 1, 1919.

In December, 1919, the lessor instituted this action against the lessee for rent for June, July, August and September, for which it was alleged the defendant had promised and agreed to pay at the rate of $100.00 per month, but that although past due it refused to pay same.

In the second paragraph it was alleged that the lessee through the negligence of its agents, servants and employes had injured and damaged the building and machinery of the lessor in many respects and amounts aggregating the sum of $23,000.00, for which sum judgment was asked, as well as for the $400.00 alleged to be due as rent.

By the first and second paragraphs of its answer the lessee traversed the allegations of the petition and by its third paragraph pleaded in bar of the lessor's right to recover under either paragraph of its petition a written contract which it was alleged the parties had executed on the 17th day of April, 1919, in lieu of all previous contracts. This contract reads as follows:

"This agreement made and entered into this the 17th day of April, 1919, by and between John Luigart and Lizzie Luigart, his wife, of Lexington, Kentucky, parties of the first part, and the Federal Parquetry Manufacturing Company, a corporation, of Lexington, Kentucky, party of the second part.

"WITNESSETH:

"That, whereas by contract dated March 23rd, 1919 (should be 1914), which contract was modified and changed by a subsequent contract of date, May the 12th, 1917, first parties leased to second party certain premises and machinery situated in the city of Lexington, Kentucky, and particularly described in said contracts; and

"Whereas under the terms thereof said lease has been terminated, such termination to take effect June the 1st, 1919; and

"Whereas by the terms of said lease second party has the right to remove certain property from the leased premises and the parties hereto desire to make a new arrangement regarding such property;

"Now, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, it is agreed between the parties hereto as follows:

"Second party will permit the following property to remain upon said premises for a period of sixty (60) days from the 1st day of June, 1919, to-wit:

"The blower, consisting of fan, mixer and piping to machines, one Atlas engine, all boilers and one pump, one dry kiln, all rails running through the plant and yards. All the balance of the property upon said premises, which under said lease second party has the right to remove, may remain upon said premises, second party to have the right to remove the same at any time it may see fit.

"First parties shall have the privilege of leasing said premises at any time after this date, in which event second party agrees to sell to his lessee, if desired, the property above specifically described for the price of $3,500.00.

"At any time after the expiration of sixty (60) day period, second party shall have the privilege of terminating this contract by written notice to first parties; and when such notice is given, first parties shall have a period of sixty days within which to sell or lease said real estate and to have the lessee purchase said personal property for the sum of $3,500.00. After the expiration of the last named sixty day period, however, in case said personal property is not purchased, second party shall remove all of its property upon said premises within sixty (60) days.

"First parties shall also have the right to terminate this contract by written notice to second party at any time after June 1st, 1919, in which event second party shall remove all of its property on such notice. In case of removal of said property, or any part thereof, by second party at any time, second party is to immediately repair any damage that may be done to first parties' premises incident to such removal.

"This contract is intended as a new arrangement between the parties hereto and shall be construed as limiting and fixing all rights and obligations of the parties hereto because of the lease aforesaid and the rights and obligations of the parties thereunder.

"The notice herein mentioned shall be given to first parties by registered mail addressed to them at Lexington, Kentucky, and shall be deemed as given upon the date when such registered mail is received. Notice is to be given to second party by registered mail addressed to No. 3 West 14th street, New York City, New York, such

notice shall be deemed as given upon receipt of such registered mail at that address.

"Second party shall have the privilege of keeping a watchman upon said premises during the period and when any part of its property may remain upon said premises.

"It is agreed and understood that the buildings and sheds erected upon said premises by second party shall be and remain the property of first parties, and also that second party makes no claim to the railroad switch built upon said premises.

"This contract is executed in duplicate, each copy to have the force and effect of an original.

"WITNESS the hands of the parties hereto, this the day and date first above written."

Plaintiff filed a demurrer to each paragraph of the answer; and upon same being overruled, filed a reply, admitting the execution of the contract of April 17, 1919, but attacked its validity upon the ground that it was contrary to law and against public policy; and because, as alleged, there was no consideration for its execution. It was further alleged that because of the invalidity of this contract the lessee's occupancy for the months sued for was a holding over under the contract of May 12, 1917, and that it was therefore liable for the rent and damages sued for under the terms of that contract.

A rejoinder completed the issues and at the conclusion of the evidence the court sustained defendant's motion for a directed verdict, and upon the verdict so returned, entered judgment dismissing the petition.

The questions thus presented for decision are, first, was there any consideration for the contract set out above? second, is that contract void as against public policy? and third, did the trial court err in the admission of parol evidence over the objection of plaintiff to explain the purpose and meaning of certain provisions of that contract?

1. It is true, of course, that a contract to be valid must be supported by a consideration, and we have no fault, whatever, to find with any of the authorities cited by counsel for appellant supporting this elementary proposition of law and explaining what is and what is not such a consideration as the rule contemplates. None of these definitions are in any wise inconsistent with the one given by this court in Funk v Funk, 122 S. W. 511, and

subsequently approved in Van Winkle v. King, 145 Ky. 691, 141 S. W. 46, as follows:

"The consideration of a contract is the recompense or reason which induces the contracting parties to enter into the agreement. When applied to ordinary contracts, which require a valuable consideration, it is that which has been or is to be given, done, or suffered as the reason that the other party agrees to do, to give, or to suffer something."

Or with the definition quoted with approval in Van Winkle v. King, *supra*, from 13 C. J. 311:

"Various definitions of consideration are found in the text books and judicial opinions. A sufficient one is: A benefit to the party promising, or a loss or detriment to the party to whom the promise is made. 'Benefit' as thus employed, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. And 'detriment' means that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise."

It is also well settled, as stated in Brady v. Equitable Trust Co., 178 Ky. 693, 199 S. W. 1082, that "To make a binding obligation, it is not necessary that some benefit should accrue to the obligor. It is sufficient for the obligee to suffer some detriment or prejudice."

Or as stated in 13 C. J. 324:

"As a valid consideration may be the doing or the promising to do something not illegal, at the request of the promisor, which promisee is not already under a legal obligation to do, or the forbearing to do something which he has a legal right to do, it is clear that the consideration need not be a thing of pecuniary value or even reducible to a money vlaue.

Applying these familiar rules to the contract under consideration, it is quite clear that there is no merit in the contention that it is not supported by a good and sufficient consideration. It was executed, as is clearly apparent from its terms, not as a modification of existing contracts, but as an entirely new agreement to cover entirely new conditions. The only connection between this and the terminated older contract is that the rights and liabilities of the parties as fixed by the termination of the older contract form the basis of the consideration of the new contract. Under the terminated contract the lessee

had the right and it was its duty to vacate the premises, and this it was about to do. The lessor, however, conceiving that he would have a better opportunity to again lease or sell his property if the lessee did not remove its machinery, procured it upon conditions given in the new contract to forego its right of removal and to leave the machinery in place on the premises in order to give the lessor an opportunity to sell or lease the premises as an equipped plant rather than as a vacant building; that this was a "benefit" to the appellant and a "detriment" to the appellee as these terms are defined above is obvious.

That there was no cash consideration and that appellant was unable to realize on the right that he obtained under the contract by leasing or selling his premises as a fully equipped manufacturing plant is wholly unimportant.

2. The contention that the contract is contrary to law and against public policy is deserving of but slight, if any, consideration. The only authorities cited in support thereof are wholly irrelevant and inapplicable. They are cases holding that it is against public policy to permit common carriers and other masters to contract against liabilities for injuries to their servants resulting from the masters' negligence.

No such conditions of public policy are involved in this contract, which simply defines the rights and liabilities of two parties dealing at arm's length and upon equal terms with reference to their private affairs.

3. While the petition does not so allege it is made clear by the evidence of the plaintiff that all of the injuries to his premises and machinery for which he sought to recover damages were sustained, if at all, prior to June 1, 1919, and that any liability, therefore, arose out of one or the other of the two earlier contracts which were finally terminated by the contract of April 17, 1919. It is true, however, that the plaintiff testified that some of the damage was inflicted subsequent to June 1, 1919, but he did not specify any particular damage that was done subsequent to that date and there is no evidence whatever of any such damage, except the broad statement of plaintiff himself that the damages about which he testified occurred both before and after that date.

Hence, if the new contract of April 17, 1919, settled all prior damages and precluded a claim by plaintiff for rent

after June 1, 1919, there was nothing to go to the jury and the court did not err in directing a verdict for the defendant.

Appellant does not contend that the contract of April 17, 1919, provides for rent or that he can recover thereunder either the rent or damages for which he sues. As will be noticed the contract provides specifically:

"This contract is intended as a new arrangement between the parties hereto and shall be construed as limiting or fixing all rights or obligations of the parties hereto because of the lease aforesaid and the rights and obligations of the parties thereunder."

There is no claim of either fraud or mistake with reference to this or any other provision of the contract. And while it seems clear to us that this and the other provisions of the contract precluded plaintiff's right to demand rent thereunder or to assert any claim under either of the two older contracts, and this opinion seems to have been shared by the trial court as well as the plaintiff, but as indicated by the trial court in admitting parol evidence in explanation of the contract he was not entirely clear about the matter and for that reason permitted the attorney who drew the contract to testify as to the statements made by the parties when together they procured him to draw the contract.

Assuming that the contract does not clearly express the intention of the parties because of latent ambiguities therein the evidence of which complaint is made was admissible, but under our view of the contract no such ambiguity exists and parol evidence to explain its provisions was therefore incompetent, but its admission was in no wise prejudicial to the appellant since a consideration thereof in no wise conflicts but simply confirms what we think the contract clearly provides.

Final complaint is made that the court erred in refusing to permit plaintiff to recover for rent under a *quantum meruit* which plaintiff attempted to plead by an amended petition which the court permitted to be filed after all of the evidence was in and pending the motion for a peremptory instruction. To this contention we can not agree, for the simple reason that the amended petition neither alleges notice to the defendant to vacate the premises as provided for in the contract nor that the defendant after such notice failed to vacate the premises

within a reasonable time, without which allegations, in view of the contract, a *quantum meruit* cause of action was not stated.

Wherefore the judgment is affirmed.