## Citizens' National Bank of Somerset v. Dodson.

(Decided November 1, 1929.)

(As Modified, on Denial of Rehearing, December 20, 1929.)

W. O. HAYS for appellant.

WALTER N. FLIPPIN for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Reversing.

The appellee, Lucy D. Dodson, is the widow of M. A. Dodson, who died in the year 1926, testate, a resident of Pulaski county, Ky. By his will she was named sole devisee and was nominated therein, and afterwards qualified as executrix of his estate. M. A. Dodson had been engaged in the undertaking business in Pulaski county under the firm name of M. A. Dodson Company, and some time prior to his death had borrowed from the appellant the sum of $1,500, for which he executed his promissory note. After his death the appellee renewed the note a number of times, the last renewal of which was made on May 4, 1928, at which time she executed a note for $1,633 due 60 days after that date, which renewal was signed "M. A. Dodson Company, by Lucy D. Dodson, Ex.," and was also signed "Lucy D. Dodson" and "W. C. Dodson." Not having been paid at maturity, appellant instituted this suit to recover the amount of the note with its interest.

Mrs. Dodson filed an answer in the first paragraph of which she admitted the execution of the original note by her deceased husband, but denied the execution of the renewal sued on or that she signed her name thereto as surety "except as and under and by reason of the circumstances and facts hereinafter set out." By the second paragraph she alleged that at the time the note was originally executed, she was the wife of M. A. Dodson; that she was not a party to the transaction and had no interest in it; that after the death of her husband and after her qualification as executrix she was requested by the plaintiff to sign the note sued on both as executrix and in her individual capacity; that the plaintiff then knew the estate of her husband was insolvent, and, for the purpose of making the debt collectable, fraudulently represented to her that she was liable on the original note and that her signing the renewal would not place any additional responsibility upon her; that she relied upon such statements and representations which were false and known by the plaintiff to be false, and by

reason of which she was induced to, and did, sign the note as executrix and individually. By a third paragraph she pleaded that "the note sued on herein was signed by her without any consideration whatever and is void as to her."

A demurrer was filed to each paragraph of the answer, but, before action thereon by the court, Mrs. Dodson filed an amended answer in which she alleged that at the time she signed the note sued on plaintiff stated and represented to her that she was legally bound and responsible upon the original $1,500 note, and that the same could be legally collected from her; that such statements were false and untrue and were known by the plaintiff to be false and untrue; that she was not legally responsible on said note nor legally bound to pay it; that such statements were made by plaintiff for the purpose of deceiving, misleading, overreaching her, and to induce her to become surety on said note, and that she relied upon such statements and would not have signed the note except therefor. The court then, upon consideration of the pleadings and the demurrer thereto, overruled the demurrer to the petition; sustained the demurrer to "that part of the answer which attempts to allege fraud and misrepresentation in procuring the signature of the defendant to the note sued on" and "overruled the demurrer to the other parts of the answer;" sustained the demurrer to that part of the amended answer "which undertook to set out fraud and misrepresentation in procuring the signature of the defendant to the note," and overruled the demurrer to that part of the answer which sets out that at the time of the execution of the $1,500 note the appellee "was the wife of M. A. Dodson and that she had no interest in same and that said money was all used by the said M. A. Dodson in his business and that defendant received no benefit from it." Thereupon plaintiff filed reply traversing the allegations of the answer and amended answer, and in a second paragraph pleaded affirmatively that at the time the $1,500 note became due it gave to the appellee notice of that fact and advised her that it was its duty to effect a settlement of the note either by paying it or renewing it; that the appellee elected to renew the note, and that she was then informed that she and W. C. Dodson would be accepted as sureties, whereupon the note sued on was executed and delivered; that appellee, as executrix, had collected approximately $33,000, assets

of the estate of her husband which she had, through carelessness, recklessness, and negligence, paid out, dissipated, and wasted, and because of which she was personally liable on the note. A demurrer was sustained to the second paragraph of the reply. This left in the case only appellee's denial of the execution of the note; her plea of no consideration, and her plea that at the time of the execution of the original note she was the wife of M. A. Dodson, had no interest in it, that the money was used by her husband in his business, and that she received no benefit from it. Under the pleadings as they then stood, appellee had the burden, and she testified as the only witness in her behalf. At the conclusion of her testimony appellant moved the court to peremptorily instruct the jury to return a verdict in its behalf, which motion was overruled. It then called its cashier, and he was the only witness in its behalf. At the conclusion of his testimony appellant again moved the court for a peremptory instruction and its motion was overruled; an exception being saved in each instance. Thereupon the case was submitted to the jury upon one question alone —that of appellee's plea of no consideration—the court instructing the jury to find for the plaintiff, unless they should believe from the evidence that the note sued on was executed by the defendant without any consideration, and, in second instruction, defined ''consideration.'' The jury returned a verdict for appellee, and, from the judgment entered thereon, the bank has appealed.

1. Appellant's demurrer to the first paragraph of the original answer should have been sustained. The denial of the execution of the note was not sufficient. In effect, it admitted execution of the note. The denial was a negative pregnant. Boeckley v. Central Savings Bank & Trust Co., 205 Ky. 508, 266 S. W. 15.

2. The demurrer to the second paragraph of the original answer and to the amended answer by which it was attempted to be pleaded that the note sued on, and plaintiff's signature thereto, were obtained by fraud and misrepresentation, was properly sustained. The alleged misrepresentations relied on, if made, were but misrepresentations of matters of law. The fact that appellee had not signed and was not bound upon the original note was known to her. As a general rule, fraud cannot be predicated upon misrepresentations as to matters of law, nor upon opinions upon questions of law based on facts

known to both parties alike (12 R. C. L. 295); and a false representation as to the law, without any misrepresentation or concealment of fact, does not amount to fraud if there is no relation of trust or confidence between the parties. Pickrell & Craig Co. v. Castleman-Blakemore Co., 174 Ky. 1, 191 S. W. 680.

The appellee's testimony shows that she is the sole devisee under her husband's will; that the first time she renewed this note, which was some time in the latter part of 1926, or early in 1927, she offered the bank a note signed "M. A. Dodson Company and myself as executrix"; that the bank refused to accept a note thus signed and she was informed that the bank would accept a renewal note if she "put her name on individually"; that she subsequently renewed the note "three or four times"; that at the time she first renewed the note she had succeeded to and was carrying on the business which had been conducted by her husband up to the time of his death; that she renewed the note then because she "didn't have the ready cash at the time it became due" to pay it; that she made the subsequent renewals because "they asked me to," and that when she made the renewal sued on the note was long past due and she was advised by letter from the bank that, if the note was not settled in some way, suit would be instituted on it.

The fact that she again renewed the note, and, because thereof and of the former renewals, the bank refrained from suing on the original note, is sufficient consideration to support her promise. In Luigart v. Federal Parquetry Manufacturing Co., 194 Ky. 213, 238 S. W. 758, 760, it is said: " 'Various definitions of "consideration" are found in the text-books and judicial opinions. A sufficient one is: A benefit to the party promising or a loss or detriment to the party to whom the promise is made. "Benefit," as thus employed, means that the promisor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. And "detriment" means that the promisee has, in return for the promise, forborne some legal right which he otherwise would have been entitled to exercise.' " See, also, American National Bank v. J. S. Minor & Son, 142 Ky. 792, 135 S. W. 278; Sellars v. Jones, 164 Ky. 458, 175 S. W. 1002.

Appellee insists that the estate of her deceased husband is insolvent, and for that reason no recovery can be

had against her on the note sued on, relying upon the cases of Grimes v. Grimes, 89 S. W. 548, 28 Ky. Law Rep. 549, and Gilbert v. Brown, 123 Ky. 703, 97 S. W. 40, 41, 29 Ky. Law Rep. 1248, 7 L. R. A. (N. S.) 1053.

In the Grimes case it appears that James Grimes held a note executed to him by his deceased brother, Samuel Grimes, which he presented to the widow, Mary Grimes, and demanded payment. After some discussion between them as to credits due, she executed to James Grimes her own note for the sum of $233, and James Grimes destroyed the note executed to him by Samuel Grimes. Subsequently James Grimes sued on the note executed by the widow, and she pleaded and relied upon want of consideration. The evidence showed beyond question that Samuel Grimes died hopelessly insolvent, and that, after payment of his burial expenses, he left nothing whatever, either to his widow and children or for his creditors. By his acceptance of the widow's note in lieu of the note of Samuel Grimes and the destruction of the latter note, James Grimes parted with nothing of value, nor was there any loss or detriment resulting to him from the transaction, nor was there any benefit resulting to the widow because of the promise. No legal right to which she would not have otherwise been entitled accrued to the widow as the result of her promise, nor did James Grimes forbear, in return for the widow's promise, any legal right which he otherwise would have been entitled to exercise. After the death of Samuel Grimes there was no estate whatever out of which he could have been paid a dime on his indebtedness, and proof of his claim against the estate would have produced nothing for him.

In the Gilbert case it is recited in the opinion that there was in the record "no evidence that any property subject to execution was received by Nancy Brown (the widow) from the estate of her deceased husband, W. H. Brown," and for that reason it was held, in that case, there was no consideration for the execution by the widow of the note to take up the note of her deceased husband.

Both of these cases, and the case of Rucker v. Wadlington, 5 J. J. Marsh. 238, also relied on, are bottomed upon the fact that there were absolutely no assets out of which the original indebtedness, in either case, could

666

have been paid in whole or in part, had the indebtedness been proven and presented as a claim against the estate.

In this case, however, it is shown by the testimony of appellant, that she was executrix and sole devisee and legatee of her husband's estate; that she had collected and there had come into her hands, assets of the estate amounting to the sum of $28,271.23, which she had "paid out on different things."

There is no evidence tending to show the amount of indebtedness against the estate nor the total amount appellee had paid thereon. It is apparent, however, that, but for the execution of the note sued on, appellant could have proven its debt against the estate and received a substantial dividend thereon. Hence it is that the cases above referred to, relied on by appellee, have no application to this case.

It follows, therefore, that the bank was entitled to a peremptory instruction at the close of appellee's testimony.

Wherefore the judgment is reversed, with directions to award the appellant a new trial and for proceedings consistent with this opinion.