## LaRue v. Bank of Columbus.

(Decided September 22, 1915.)

### Appeal from Hickman Circuit Court.

1. Corporations—Creditors—Equitable Lien Upon Assets.—The equitable rule, that the assets of a corporation are subject to an equitable lien in favor of its creditors, who may follow the corporation's assets, or the proceeds thereof, into the hands of whomsoever they can be traced, and that such assets may be subjected to the payment of the claims of creditors, except as against a bona fide purchaser, for value, is recognized; but is held to be not applicable to the facts of this case.

2. Banks and Banking—Conveyance of Assets—Stockholders.— Where bank F conveyed all of its assets to bank C, under an agreement that bank C would immediately pay the depositors of bank F, and after reimbursing itself out of collections realized from the assets transferred to it by bank F, bank C would turn over to bank F any surplus received by bank C from the assigned assets, and the contract was carried out, and the surplus turned over to bank F, there was no consolidation of the two banks, and a stockholder of bank F acquired no rights against bank C.

3. Corporations—Directors—Election of.—Under section 551 of the Kentucky Statutes, which requires that directors of a corporation shall be chosen annually by the stockholders, directors hold office until their successors are elected and qualified.

FLATT & VIA for appellant.

BENNETT, ROBBINS & ROBBINS and J. M. BRUMMAL, JR., for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER.—Affirming.

The appellant, Mrs. L. M. LaRue, who was the plaintiff below, owned 30 shares of the capital stock of the Farmers Bank of Columbus, of the par value of $3,000.

While it is not expressly stated in the pleadings, it is apparent that the Farmers Bank became embarrassed in the summer of 1911; and, with the view of liquidating its business and immediately satisfying its depositors, the bank, by C. H. Beshears and his four co-directors, entered into a written contract with the appellee, the Bank of Columbus, by which the last named bank assumed the deposits of the Farmers Bank, and agreed to advance a sum of money sufficient to pay the depositors of the Farmers Bank, upon demand.

Each bank is a Kentucky corporation.

For the purpose of securing the Bank of Columbus against loss in its undertaking, the Farmers Bank assigned all of its assets to the Bank of Columbus "for the express purpose of reimbursing the Bank of Columbus for any sum and all moneys it might advance for the Farmers Bank to its depositors." The contract further provided that the Bank of Columbus should keep the affairs of the Farmers Bank separate and distinct from its own affairs so as to show, at all times, the exact standing of the Farmers Bank; that the Farmers Bank was to have a representative to assist in attending to its business; and, after the depositors of the Farmers Bank should be satisfied, any surplus thus collected by the Bank of Columbus, should be turned over to the Farmers Bank.

The contract made by the directors of the Farmers Bank was ratified at a meeting of the stockholders of that bank, on July 1st, 1911; and, pursuant to the contract, the Farmers Bank turned over to the Bank of Columbus notes valued at $17,361.87, and cash in Cairo, New York and Louisville banks, amounting to $3,649.39.

In executing its part of the contract, the Bank of Columbus paid $14,595.64 to the depositors of the Farmers Bank; and, having reimbursed itself to that extent, the Bank of Columbus, on August 8th, 1913, delivered to the Farmers Bank all the remaining assets it had received under the assignment from the Farmers Bank.

On January 12th, 1914, the two banks executed a writing, which recited the assignment above referred to, and acknowledged the execution of the contract to the satisfaction of both parties, and the receipt by the Farmers Bank of the surplus funds which had been held by the Bank of Columbus. During these transactions the Farmers Bank owned real estate valued at $7,000.00, which remained, however, entirely in the hands and under the control of the Farmers Bank, at all times.

On May 8th, 1914, the appellant, Mrs. LaRue, brought this action against the Bank of Columbus, alleging her ownership of the 30 shares of stock in the Farmers Bank; that in 1911 the defendant, the Bank of Columbus, took over and absorbed all the assets of the Farmers Bank, including its capital stock, notes, and accounts, choses in action, and other assets; that the Bank of Columbus agreed to collect said notes and assets and pay the depositors and creditors of the Farmers Bank, which was absorbed by and consolidated with and became a part of the Bank of Columbus; and that by reason thereof, the Bank of Columbus became liable to the plaintiff as a stockholder and creditor of the Farmers Bank to the extent of $3,000.00, the par value of her 30 shares of stock; that she had been paid $1,800.00 on said claims by the Bank of Columbus, leaving $1,200.00 due her, for which she prayed judgment against the Bank of Columbus.

The answer denied that the two banks had ever been consolidated, and set up as a defense, the contract of June 28th, 1911, above referred to, under which the Bank of Columbus had received certain assets of the Farmers Bank; had satisfied the depositors of that Bank; and had turned over the surplus to the Farmers Bank.

The answer further controverted the allegation of the petition, that the Bank of Columbus paid Mrs. LaRue $1,800.00 upon her stock; and affirmatively alleged that said sum had been paid to her by the Farmers Bank.

The circuit court overruled a demurrer to the answer; and, the case having been submitted upon the pleadings, the petition was dismissed. The plaintiff appeals.

Evidently the action was brought upon the theory that the case fell within the equitable rule that the assets of a corporation are subject to an equitable lien in favor of its creditors, who may follow the corporation's assets, or the proceeds thereof, into the hands of whomsoever they can be traced and that such assets may be subjected to the payment of the claims of creditors, except as against a *bona fide* purchaser, for value.

This well-known equitable rule has been repeatedly recognized in this jurisdiction. Camden Interstate Ry. Co. v. Lee, 27 Ky. L. R., 75; 84 S. W., 332; Harbison-Walker Refractories Co. v. McFarland's Admr., 156 Ky., 51; Martin v. Sulfrage, 159 Ky., 368.

But the facts of this case do not bring it within the rule relied upon.

While it is true the contract of June 28th, 1911, recited that the directors of the Farmers Bank had "voted at a meeting called for the specific purpose, to consolidate with the Bank of Columbus," subject to the approval of the stockholders of the Farmers Bank, the effect of the contract, as actually made with the Bank of Columbus, only bound the Bank of Columbus to pay the depositors of the Farmers Bank and reimburse the Bank of Columbus out of the assets assigned to it by the Farmers Bank for that specific purpose.

It is apparent that while the directors of the Farmers Bank contemplated a consolidation of that bank with the Bank of Columbus, and called a meeting for that purpose, the contract as finally made, was entirely different. The expectations or hopes of the directors of the Farmers Bank can not affect the rights of the Bank of Columbus. Its rights are to be tested by the contract which it made, and not by a contract which the Farmers Bank had hoped would be made.

As above pointed out, the contract specifically required the Bank of Columbus to keep the affairs of the Farmers Bank separate and distinct from its own affairs, so as to show at all times just how the affairs of the Farmers Bank stood.

The method of consolidating corporations is pointed out by sections 555 *et seq.* of the Kentucky Statutes; but no attempt whatever was made to proceed under the statute. It is clear, therefore, that the case does not come within the equitable rule above referred to, that where one corporation transfers all its assets to another corporation, and thus practically ceases to exist, without

having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation. None of the facts necessary to the application of the rule exist in this case. There was no absorption of one corporation by the other, and the Farmers Bank neither parted with the ownership of its assets nor ceased to exist; it merely pledged a part of its assets to the Bank of Columbus to secure it against loss under its agreement to pay the depositors of the Farmers Bank; and Mrs. LaRue, not being a depositor of the Farmers Bank, did not come within the protection of the contract.

The cases of Deposit Bank of Owensboro v. Barrett, 11 Ky. L. R., 910; 13 S. W., 337, and Dupoyster v. First National Bank of Wickliffe, 29 Ky. L. R., 1153; 96 S. W., 830, relied upon by appellant, are of no controlling force under the facts of this case.

The petition further seeks, however, to sustain the plaintiff's claim, by alleging that Beshears and his four co-directors of the Farmers Bank, were elected directors in 1911; that the stockholders of the Farmers Bank had never held a meeting to elect directors subsequent to that date, although under section 551 of the Kentucky Statutes the directors are required to be elected annually; that Beshears and his co-directors, for that reason, had no authority to execute the settlement paper of January 12th, 1914; and, that the Bank of Columbus was liable for the assets of the Farmers Bank thus unlawfully received. Under the facts of this case it is difficult to see how these legal propositions, if true, could operate to the plaintiff's benefit, since the Bank of Columbus has no property belonging to the Farmers Bank, and used whatever property it received from the Farmers Bank in discharging the claims of depositors against that bank. Aside from this, however, it will be noticed that while section 551 of the Kentucky Statutes provides that directors of corporations shall be chosen annually by the stockholders, it further provides that directors shall hold office until their successors are respectively elected and qualified.

It will be seen, therefore, that Beshears and his four co-directors were not only directors according to the express terms of the statute, at all times specified in the petition, but that their act in making the contract was ratified by the stockholders.

Furthermore, since Beshears and his associates were directors when they made the contract in 1911, it would not be invalidated by a subsequent failure to elect directors even though there was no statute providing for their continuance in office until the election and qualification of their successors.

Under either view of the case, the appellant has no valid claim against the Bank of Columbus.

Judgment affirmed.