## Lincoln Court Realty Co. v. First National Bank.

(Decided March 2, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Division No. 2).

1.   Corporations—Ultra Vires.—A corporation which is entirely owned by one man who is primarily liable on a note to a bank, which note is paid with money raised on a mortgage executed by the corporation, is not entitled to recover the money so paid either on the ground that the mortgage was an ultra vires act of the corporation, or that the funds of the corporation were misappropriated to the payment of a debt of the individual who was the sole owner and beneficiary of the corporation.

2.   Corporations—Loan of Money to by Bank—Transfer of Check to a Second Corporation.—Where a bank loans money to a corporation on a real estate mortgage, and issues to such loanee a check or draft payable to it, and the payee in such check or draft indorses and transfers the said check or draft to another corporation which takes the paper to another bank and deposits it to the credit of the second corporation, there is no misappropriation of the funds of the first corporation by the bank which receives and deposits the check or draft to the credit of the second corporation, for the appropriation was made by the first corporation when it transferred the check or draft to the second corporation and not by the bank whose duty it was to receive and pay the draft to the second corporation, when properly assigned and transferred.

BLAKEY, QUIN & LEWIS for appellant.

BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant, Lincoln Court Realty Company, is and was at the times hereafter mentioned a corporation engaged in business in the city of Louisville. It was organized by Reihms, Brooks and Dundon at the instance of Montenegro and for his benefit. After the stock was issued to the three persons named and they were elected directors and officers, Montenegro conveyed to the corporation a parcel of land which he had subdivided and named Lincoln Court. Before he made this conveyance, however, he required Reihms, Brooks and Dundon, the organizers, stockholders and directors of the corporation, to assign their certificates of stock in the corporation to him, but the stock books and other records did not show the transfer of the stock nor that Montenegro had any interest whatever in the corporation, although he was its sole owner and beneficiary.

The Montenegro-Reihms Music Company was and is a corporation with Montenegro, Reihms and Montenegro, Jr., its stockholders and officers. This latter corporation became indebted to the First National Bank of Louisville in the sum of $4,500.00, which indebtedness was evidenced by a note which fell due in August, 1913. The bank demanded payment and the music company being unable to arrange for the money and Montenegro, Sr., being out of town, Mr. Reihms, the president, undertook to and did negotiate a loan to the realty company from the Kentucky Title Savings Bank & Trust Company for $3,000.00, which was secured by a mortgage on real estate of the Lincoln Court Realty Company. This loan and mortgage were authorized by a resolution duly made and entered on the books of the board of directors and stockholders of the corporation. With this $3,000.00 and $1,500.00 which was to the credit of the music company in the First National Bank, the $4,500.00 note was paid, and that note together with $7,000.00 of collateral notes was returned to the music company. On this note which was paid both Montenegro and Reihms were sureties. When the note for $3,000.00 to the title company became due, the realty company refused payment, and suit was brought by the title company against the realty company, and after much litigation and appeal to this court, the bank's claim was upheld and the realty company required to pay. Thereupon, the realty company brought this action against the First National Bank to recover

the $3,000.00, averring that the bank through its president, Mr. Swearingen, had caused or knowingly allowed the music company to appropriate $3,000.00 of money of the realty company to the payment of the music company's debts. Issue was joined and evidence taken. The chancellor dismissed the petition of the realty company and adjudged it not entitled to recover the $3,000.00, or any part thereof, and it appeals.

When the realty company obtained the loan of $3,000.00 from the title company and made the mortgage to it, the title company issued a check or draft for the $3,000.00 to the realty company which the realty company thereafter assigned and transferred to the music company, and the music company then carried the paper to the First National Bank and deposited it to the credit of the music company, which already had $1,500.00 to its credit, making a total of $4,500.00. It then gave a check to the bank in payment of its $4,500.00 note, and that note and the collateral attached thereto were turned over to the music company.

Swearingen was the president of the First National Bank, and also president of the title company, and he testifies that he did not know the relations between the music company and the realty company, but that he understood they were very close together, or that they had interlocking directorates; that he did not know at the time of the payment of the note what arrangements had been made between the music company and the realty company, whereby the music company received the benefit of the loan which had been made by the title company to the realty company, and that he supposed that the money had been loaned by the realty company to the music company for the purpose of paying the debt to the bank; or if not loaned, then paid by the realty company to the music company in discharge of some obligation which the realty company owed the music company, and accepted the check or draft with that idea in mind and without knowledge that the realty company had borrowed the money for the sole use and benefit of the music company and for the purpose of discharging the debt of the music company.

It must be admitted that if the transactions which led up to the loan and the payment of the $4,500 note are as stated by Swearingen and the witnesses for the First National bank, then that institution is not liable to the realty company; but if the loan was obtained by the

realty company for the purpose of discharging the debt of the music company then its act was *ultra vires,* and the realty company was not bound. These questions, however, were largely determined by the appeal of the case of Kentucky Title Savings Bank & Trust Company v. Lincoln Court Realty Company, reported in 169 Ky. 840.

When the title company accepted the note and mortgage of the realty company and loaned it $3,000.00, and issued to the realty company a check or draft for that amount which was assignable, and the realty company after accepting it duly and properly indorsed and assigned the said check or draft to the music company, it was the duty of the bank to accept and pay the said check or draft to the music company, and it was not the bank's duty to inquire into how the music company obtained the assignment or to know the amount of consideration paid therefor, especially when the paper came to the bank in due form bearing the assignment of the payee. Having in good faith paid the draft or check, the bank was not liable to the realty company because it did not appropriate any of the money of the realty company to the extinguishment of the debt of the music company, but if there was an appropriation of the money of the realty company to the use and benefit of the music company that appropriation was made by the realty company itself, and not by the bank and not with the bank's knowledge or connivance.

Appellant insists that the bank appropriated and holds money which in good conscience it ought not to retain. This is not borne out by the facts. Montenegro, who was at the time of the payment of the note in August, 1913, the sole owner of the realty company and an owner of practically one-half of the stock of the music company, was also a surety on the $4,500.00 note due the First National Bank. He was, therefore, liable in the first instance to the First National Bank for the $4,500.00. The realty company was merely a form through which Montenegro did business, because he was the sole owner of that corporation. Its officers and directors were merely his agents and acting for him and his corporation. Looking to the substance rather than the form, we conclude that the realty company was but Montenegro under another name and was liable indirectly, if not directly, to the First National Bank for the $4,500.00 on which Montenegro was surety. When Montenegro's agents, acting as directors of the realty company, au-

thorized the making of the mortgage on the real estate and the obtention of the loan of $3,000.00, they merely functioned for Montenegro and in his interest and for his benefit. When the $4,500.00 was paid the collateral of more than $7,000.00 in notes due the music company, of which Montenegro was a half owner, was returned to the music company and therefore to Montenegro, and he received the use and benefit of the collateral thus returned to his company. Viewed from this standpoint, Montenegro's corporation, the realty company, paid off and discharged the note of Montenegro to the First National Bank, and Montenegro received the benefit of the payment and it would do violence to the plainest and simplest principles of justice to require the bank, which has returned to Montenegro Music Company all of its collateral, to now again pay to Montenegro, or to his realty company, the $3,000.00 which was justly due the bank and was paid by the realty company on a debt which Montenegro, its owner, had contracted.

No error appearing to the prejudice of appellant, the judgment is affirmed.