## Bank of Murray v. Farmers' Bank of Hazel.

(Decided Nov. 9, 1934.)

JOHN G. RYAN for appellant.

J. C. SPEIGHT and D. H. HUGHES for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

The Bank of Murray is appealing from a judgment in favor of the Bank of Hazel for $850.98 with interest, representing the balance due on a deposit with the former by the latter, evidenced by a certificate of deposit.

In its original petition the plaintiff merely alleged that it deposited $1,000 with the Bank of Murray and that certain sums had been paid thereon and sought recovery of the balance due with interest; but in an amended petition it alleged that at the time the original petition was drafted it did not fully understand the situation with reference to the Bank of Murray and had since received information that because of financial troubles it had reorganized and that, as reorganized, had taken over all the assets and assumed all the liabilities of the Bank of Murray at the time of the reorganization and assumed and agreed to pay the obligations including the deposit of appellee.

Appellant filed an answer consisting of a number of paragraphs setting up various affirmative defenses. This answer together with two amendments covers about thirty pages, and it would be impracticable to attempt to enter into a detailed statement of the defenses attempted to be interposed. In substance and effect it is alleged and made to appear from the answer as amended that the deposit referred to in the petition was made with what is termed the "old" bank, and that the amount of the deposit and the sums paid as credited thereon are correctly set forth in the petition; that what is termed the "new" Bank of Murray did not assume or agree to pay the liabilities of the old bank, except to the extent provided in the reorganization plan later set out in the answer. The answer sets forth in great detail the financial difficulties with which the Bank of Murray and other banks in the community were beset

during the financial depression and facts and circumstances with reference to rules adopted for restricted payment to depositors, and the impairment of the capital and assets of the bank as showing its insolvency because of inability to meet all its obligations and liabilities; that these facts and circumstances were made known to the State Banking Commissioner with the suggestion on the part of the directors of the bank that it be closed and reorganized under the provisions of chapter 19, Acts of 1932, sec. 2 (section 165a-64, Kentucky Statutes, 1933 Supplement); that the commissioner refused to recognize the validity of that act or to take any steps thereunder, and stated that if the bank were closed, liquidation would immediately ensue without any attempt at reorganization. An agreement entered into and signed by more than 90 per cent. of the stockholders and depositors of the bank, styled ''Reorganization Plan and Agreement of the Bank of Murray,'' is set forth at length in the answer. In this reorganization plan the depositors were divided into classes according to the nature and amount of their deposits, and appellee's deposit fell into what is termed class D. It was provided that deposits of that class should be reduced 20 per cent. for the benefit of the new bank and 10 per cent. of the deposit would go to purchase capital stock therein; that this plan for reorganization was submitted to the Banking Commissioner, but he again refused to officially approve or disapprove but encouraged the reorganization of the bank; that pursuant to the plan the ''new'' Bank of Murray was organized and the assets and property of the ''old'' bank were transferred to it and the Banking Commissioner approved the articles of incorporation; that because of the facts alleged showing the insolvency of the bank, it was, to all intents and purposes, closed; that because of the knowledge of the Banking Commissioner concerning the condition of the bank and the reorganization plan, and his insistence that it be reorganized, although not giving official approval, this should be treated as a reorganization under the act hereinbefore referred to; and that appellee should be held bound by the reorganization agreement. It further set forth the amount of the liabilities of the bank and the value of its assets and alleged that at the time of the reorganization, the assets were not sufficient to pay more than 60 per cent. of the liabilities, and that if the bank had been liquidated, appellee would not have received more than that per cent.

of its claim; that if it be held that it was not bound by the reorganization agreement, then the cause should be transferred to equity and evidence heard and appellee paid such sum as under the proof it would have been entitled to on a pro rata distribution of assets of the old bank.

By way of estoppel it was pleaded that the old bank was dissolved and notice of such dissolution was published as required by law; that appellee did not set up its claim nor interpose objection to the dissolution. Further, that the chief officer and directors of appellee urged and persuaded other depositors of the same class to sign the reorganization agreement with the view and purpose of enabling it to collect its claim in full, thus gaining advantage over other depositors of the same class; that by reason of such acts and conduct upon the part of appellee and its officers, it is estopped from asserting the full amount of its claim and should be either held bound by the reorganziation agreement or adjudged entitled to recover only what it would have received under a pro rata distribution had the bank been liquidated.

Under the heading of "Points and Authorities" in brief filed by counsel for appellant it is said:

"Where one corporation sells to another all its property and franchises, under authority conferred by charter, the bona fide purchaser, for value takes the property free from the claims of creditors of the vendor who has no lien upon the property."

And in support of this proposition the case of Chesapeake, O. & S. W. R. Co. v. Griest, 85 Ky. 619, 4 S. W. 323, 9 Ky. Law Rep. 177, is cited. From the foregoing it would appear that counsel regarded the transaction referred to in the answer as a sale of the assets of one corporation to another; however, the pleading and reorganization agreement set forth therein clearly evidences a purpose to reorganize under the provisions of chapter 19, Acts 1932. In fact, it is said in part in article 5 of the agreement:

"The new bank is simply a reincorporation of the old bank, and shall succeed to all of the assets and liabilities of the old bank, including its franchise and name, and including the expenses of reorganization."

It is very frankly stated by counsel for appellant

that they have attempted to present and sustain the theory that the reorganization plan and agreement is binding upon appellee under the Act of 1932, supra; however, they are equally frank in admitting a doubt as to the soundness of this proposition because all of the steps necessary to bind appellee thereunder were not taken.

Under the statute existing at the time, insolvent banks could be closed in two ways: (1) By voluntary act of the directors under section 19, c. 17, Acts 1932; or (2) by act of the Banking Commissioner as provided for in that chapter. If the bank had been closed in either of these ways, a reorganization might have been effected in conformity with chapter 19 of the Acts of 1932, under a plan and agreement submitted to and approved by the Banking Commissioner, which would have been binding upon appellee to the same extent as if it, had joined in the execution of the agreement; and the action of the Banking Commissioner in approving or disapproving a plan of reorganization of the bank thus closed; would have been subject to review by this court and any arbitrary or improper act upon his part in that particular would have been set aside. Sweeny v. Jefferson County Bank's Reorganization Committee, 250 Ky. 187, 61 S. W. (2d) 1090; Dorman v. Dell, 245 Ky. 34, 52 S. W. (2d) 892; Milner v. Gibson, 249 Ky. 594, 61 S. W. (2d) 273.

Although recognizing that the steps taken for the reorganization of the bank were not in conformity with the provisions of the act under which the reorganization was attempted to be made, counsel fall back upon the maxim that equity regards as done that which should have been done; but, here again, they express doubt as to whether this maxim will apply to ministerial acts of an officer, and we might add that it is further to be doubted whether it would apply where the failure to do the thing is due to inaction or negligence upon the part of the party invoking it.

Apart from chapter 19 of the Acts of 1932, and the sections relating to the conversion of state banks into national banks and national banks into state banks, we find no provision for the reorganization of banks under the laws of our state, unless it should be held that section 554 relating to corporations generally applies. Whether in this instance it would apply, or whether it

applies solely to corporations existing prior to the adoption of our present Constitution and the enactment of this statute, we need not determine, since, under its provisions, all the assets of the old corporation would without deed or transfer be vested in the new corporation, subject, however, to all liabilities against the old corporation, its officers and stockholders at the time of the reorganization.

Since appellee did not join in the reorganization agreement or otherwise assent to a reduction of its deposit, we find no statute or principle of equity that would, in the circumstances, relieve appellant of its full liability thereon, nor is anything shown that would warrant an application of the doctrine of estoppel.

Judgment affirmed.