## Vogt et al. v. City of Louisville.

(Decided Dec. 21, 1934.)

ARTHUR B. BENSINGER for appellants.

WILLIAM T. BASKETT, MARK BEAUCHAMP, JOHN L. WOOD-BURY and THOMAS A. BALLANTINE for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This suit was instituted by the city of Louisville, appellee herein, against James B. Brown, Henry Vogt, John Stites, Saunders P. Jones, R. L. Callahan, Walter I. Kohn, Geo. M. Clark, S. E. Duncan, T. K. Helm, H. J. Angermeier, J. S. Akers, E. J. O'Brien, Jr., and C. C. Mengel, appellants herein, to recover indemnity for certain sums of money on deposit in the National Bank of Kentucky, November 17, 1930, when the bank was closed by order of the Comptroller of Currency and a receiver appointed for the institution.

The petition alleges that the appellants as sureties, and the National Bank of Kentucky as principal, executed and delivered a depository bond to the city of Louisville, pursuant to section 2903, Ky. St., in the penal sum of $500,000 for the safe-keeping of the general and special deposits of the city of Louisville and the prompt payment thereof with interest at the rate of 3.91 per cent. per annum on the daily balances, payable monthly.

The following items were on deposit at the time of the closing of the bank:

In City's General Fund ...................$280,934.39
In Grade Crossing Elimination Fund ....... 263,263.29
In Firemen's Pension Fund ............... 1,654.05
In Policemen's Pension Fund ............. 2,583.91

    Total .........................$548,435.64

This appeal does not involve the general fund. The sureties have admitted their liability with respect to the general and current deposits and have secured a release from the city by reason of payment of this item. Nor are the firemen's pension fund and policemen's pension fund involved in this appeal. A demurrer was sustained to the claims based on these items

and the city has not prosecuted any appeal from the judgment of the court dismissing the claim based on these deposits.

The item in dispute is the grade crossing elimination fund. The assets of the defunct bank were sufficient to pay a large portion of its liabilities and the grade crossing elimination fund was reduced to $93,278.09, and the court entered judgment against appellants for this sum with interest thereon at 6 per cent. per annum from April 7, 1931. To reverse that judgment the appellants have prosecuted this appeal.

For ground of reversal appellants insist that their liability as sureties on the bond was restricted to the "current deposits" referred to in section 2903, Ky. St., and that the proceeds of the sale of the grade crossing elimination funds are controlled by section 2839b-2, Ky. St. The pertinent parts of the bonds with respect to funds covered and the obligations imposed are as follows:

"Whereas, the City of Louisville, pursuant to statute, in such cases made and provided, having requested and received bids from various banks for the *general and special deposits* of the City of Louisville, during the year 1930, has selected the National Bank of Kentucky, in Louisville, Kentucky, as its depository for the funds and· monies of the City of Louisville, Kentucky, and * * * shall faithfully perform the duties as depository and shall safely keep and promptly pay over, upon the proper and duly authorized check or order, of the City of Louisville, all of its monies that have heretofore been or may hereafter be deposited with said Bank by the City of Louisville * * *."

It is stipulated:

"The Mayor and the Director of Finance of the City of Louisville did select The National Bank of Kentucky, which agreed to give the highest rate of interest, for the current deposits of the City's funds, and which did give and maintain the bond described in the petition and referred to in Item 1· hereof, which was approved by said City officials. Said bond was conditioned for the safekeeping and prompt payment of said funds, or any part thereof described and referred to in Section

2903, Kentucky Statutes, when demanded by the Director of Finance.

"That the plaintiff, City of Louisville, in conformity with Section 2903, Kentucky Statutes, duly requested bids from Banks and Banking institutions to state the highest rate of interest which each would agree to pay for the current deposits of the City's funds and it was required that 'such Bank shall give and maintain a bond' to be approved by the said City officials, said bond to be conditioned for the safekeeping and prompt payment of said current deposits aforesaid, or any part thereof, referred to in Section 2903, Kentucky Statutes, when demanded by the Director of Finance."

And it is further stipulated:

"* * * that the plaintiff has no claim against the defendants on account of liability on the bond sued on, on account of the deposit to the credit of the City of Louisville, or on account of current deposits, unless the proceeds from the sale of Grade Crossing Elimination Bonds under section 2839b-2, Kentucky Statutes, deposited to the credit of 'City of Louisville Grade Crossing Elimination Fund, J. J. Kunz, Director of Finance' constitutes a part of the current deposits, as described in Section 2903, Kentucky Statutes."

Section 2903, Ky. St., reads:

"*Bank selected annually for current deposits.*

—The mayor, comptroller and treasurer, and when the offices of comptroller and treasurer shall have ceased to exist, as provided by this act, the mayor and director of finance shall annually select a bank or banks, or banking institutions, which will give the highest rate of interest for the current deposit of the city's funds, and which shall give and maintain a bond, to be approved by said city officials, said bond to be conditioned for the safekeeping and prompt payment of said funds, or any part thereof, when demanded by the treasurer or director of finance, as the case may be."

It is insisted for appellee that in construing section 2903, Ky. St., with respect to the funds referred

to therein, sections 2902-1 and 2902-2 and 2902-3 should be taken into consideration with 2903 and all these sections read and construed together, thereby including within the obligation of the bond the grade funds as well as the current deposits.

Section 2902-3 requires that money received from collections of all bonds, etc., "shall be deposited in the city treasury regularly once a day, unless otherwise provided by law or ordinance." Section 2839b-2 provides that as the grade bonds are sold the proceeds shall pass to the credit of the department of works and go to the depository selected by the sinking fund for its funds. This is in harmony with the provisions of section 2902-3, which says "unless otherwise provided by law or ordinance." Section 3010-12 provides that the commissioners of the sinking fund shall deposit the grade funds in some depository selected by them and shall take bond to secure the said commissioners for the payment of all moneys or other things of value so deposited by them.

Reading these sections together, it is obvious that the grade funds herein in question were under the control of the department of works and required to be deposited in the depository selected by the sinking fund commissioners for its funds. Section 3010-12 is radically different from section 2903, which requires the mayor and director of finance to select a depository for the current deposit of the city's funds, under which section it is admitted that the bond in question was exacted. The mayor and director of finance are given no authority to select a depository for the grade funds. Taylor, Drainage Com'r, v. Fidelity & Casualty Co. of N. Y., 246 Ky. 598, 55 S. W. (2d) 410.

It is argued for appellee that "current deposits" mean "running deposits," belonging to the present time, and that under the provisions of section 2902-3, which requires *all* money belonging to the city to be deposited in the city treasury once a day unless otherwise provided by law or ordinance, brings the grade funds within the class of "current funds" referred to in section 2903; and that the bond required the depository to safely keep *all* of the city's money's; and, the grade funds being a part of the city's moneys, it was necessarily brought within the provisions of the bond.

In speaking of public funds or public expenses of government, etc., "current" is used to designate a particular class of funds or expenses, but does not include all funds, such as sinking funds to retire a bonded indebtedness (or, as in the instant case, grade crossing elimination fund), which are levied and designated for a particular purpose, although such fund may be collected and deposited daily. A fund is not characterized by its time of collection or deposit, but by the purpose for which it was created. It is equally well known that a fund created and collected for a particular purpose is not considered or referred to as "current" funds.

With respect to the contention that the fact that the grade fund was the moneys of the city brought the fund within the obligations of the bond, we are unable to agree with counsel. Of course, all the funds were the moneys of the city, but this does not mean that separate depositories may not be required for each fund, or that separate bonds may not be required for each fund even though the different funds are deposited in the same depository. All funds were in the same depository but they were different classes of funds, and did not necessarily have to be covered by one and the same bond. The bond was restricted to the current deposits under section 2903. Each fund, in its ordinary and technical acceptation, was a separate entity; although all funds were the moneys of the same common entity, city of Louisville. The owner of different classes or species of property may enter into a contract affecting one class which would not necessarily affect the other.

It is further argued for appellee that the bond covered "special deposits" and that the grade fund was a "special deposit," because it constituted a separate account for the purpose of indentification. We do not think this contention is in harmony within the meaning of the term "special deposit" in its ordinary and technical acceptation. So far as the record discloses there is no "special deposit" in controversy. A "special deposit" has been defined to be a deposit in which the identical subject-matter deposited must be kept and delivered in kind or applied to a particular designated purpose, without right or authority on part of the depository to use it for a purpose other than

designated. 18 C. J. 562; Tuckerman v. Mearns, 49 App. D. C. 153, 262 F. 607; Lewis, Special Banking Com'r, v. Dark Tobacco Growers' Co-op. Ass'n, 247 Ky. 301, 57 S. W. (2d) 8.

The National Bank of Kentucky, principal, for which appellants were surety, paid interest for the use of the funds deposited with it and, therefore, had the right to mix and commingle it with other funds of the bank and use it as it saw proper. This fact alone is conclusive that the funds so deposited with it did not constitute a "special deposit."

An analysis of these sections of the statutes do not disclose any conflict or ambiguity. Section 2903 requires the mayor and director of finance to select a depository which will give the highest rate of interest for *current deposits of the city's funds* and to take a bond for its safekeeping, etc.; section 2839b-2 places all bonds (which include grade bonds) under the control of the board of works and requires the proceeds of the sales of such bonds to go to the credit of the department of public works in the same depository selected for the deposit of the sinking fund. Section 3010-12 places the sinking fund under the control of the sinking fund commissioners and requires the commissioners to deposit such funds in some depository of their selection. Section 2902-3 requires all moneys belonging to the city to be deposited in the city treasury regularly once a day "unless otherwise provided by law or ordinance"; section 2839b-2 provides "otherwise by law," wherein it says that the grade funds shall pass to the credit of department of works and be placed in the same depository selected by the sinking fund for its fund as provided in section 3010-12.

This being a statutory bond, the authority of the city officials to take it was derived solely from the statutes, and in so doing they were restricted to the authority only granted by the statute. Section 2903 of the statutes authorizes the mayor and director of finance to select a depository for the "current deposit of the city's funds" and take the required bond, but does not confer any authority on them with respect to the grade fund, and their authority being limited by statute to the current deposits, they had no authority to take bond covering a fund controlled by another

statute (section 2839b-2). Taylor, Drainage Com'r, v. Fidelity & Cas. Co. of N. Y. supra.

The argument is that the several statutes are parts of the same general subjects and should be considered together and given a harmonious and consistent construction to carry out the plain purpose of the legislative scheme. But this rule of construction does not mean that the restrictions placed upon a power in one instance can be extended to another case for which they were not intended and from which they were virtually excluded. When one provision is made for particular circumstances and another provision is made for other circumstances, it would lead to confusion if the distinctions were disregarded and the directions designed for one situation were attempted to be super-imposed under circumstances calling for the application of the other. And even though the statutes are to be considered and construed together for the purpose of ascertaining the cases covered, restrictions addressed to one state of facts cannot be read into another situation where the limitation was omitted and to which it was not necessarily pertinent. In considering all the different provisions made for the particular circumstances that were contemplated, it is necessary to preserve the procedure designed which each individual situation described. Confusion is avoided and harmony maintained by confining the operation of a statute to the circumstances to which it was intended by the Legislature. Liberty Bank & Trust Co. v. Kentucky Title Trust Co. et al., 239 Ky. 263, 39 S. W. (2d) 258; Lalley v. Lalley's Adm'r, 256 Ky. 50, 75 S. W. (2d) 544.

Appellants are gratuitous sureties. In 50 C. J. 78, the rule with respect to gratuitous sureties is stated thus:

"A gratuitous surety is a favorite of the law and the contract must be strictly construed to impose on the surety only the burdens clearly within the terms of such contract so that it cannot be extended by implication, presumption or construction."

To the same effect, see Bates et al. v. Crane County (Tex. Civ. App.) 55 S. W. (2d) 610; Murfree Off. Bonds, sec. 710.

The stipulated facts measured to the statutes in-

volved and other authorities cited herein impel us to the conclusion that section 2903, Ky. St., under which the bond was exacted, limited the obligations of the bond to the current deposits and that such "current deposits" as the term is used in that section of the statutes does not include the grade crossing elimination fund and the city has no right of recovery against the sureties on the bond with respect to the grade crossing elimination funds.

Wherefore, the judgment is reversed for proceeding consistent herewith.

The whole court sitting except Judge Dietzman.