# Dorman, Banking Com'r, et al. v. Carnes et al.

(Decided June 23, 1936.)

362

GALVIN & TRACY and LEWIS LEVY for appellants.

L. P. FRYER, JOHN E. SHEPARD, JOHN P. McCARTNEY, JOHN BEST and JOHN COLVIN for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

James R. Dorman, banking commissioner of Kentucky, and Floyd A. Thomasson, special deputy banking commissioner, in charge of liquidation of the Pendleton Bank, are appealing from a judgment of the Pendleton

circuit court dismissing their petition as amended in an action whereby they sought to recover of C. W. Carnes and others on a bond executed pursuant to a written agreement between the Pendleton Bank and the Citizens Bank whereby the former took over the assets and assumed the liabilities of the latter.

As appears from the evidence and the inferences drawn therefrom, these institutions were actively engaged in banking business at Falmouth, Ky., prior to April 19, 1930. Some time prior to April, 1930, because of certain existing matters and conditions, the Citizens Bank came under the criticism of the state banking department, but apparently these matters and conditions were adjusted to the satisfaction of the department. This, however, did not alleviate the bank's troubles, since continual withdrawals by depositors exceeded deposits, indicating a loss of confidence by the public in the bank and possibly in some of those in charge of its affairs. Naturally this situation caused embarrassment and great apprehension upon the part of those responsible for the management of the bank. Some of the directors and other officials of this bank approached the president and cashier of the Pendleton Bank with a suggestion or tentative proposal for the consolidation or merger of the two institutions. The evidence as to the discussion of the proposal is scanty; however, it does appear that it was at first received with favor by officers of the Pendleton Bank. In the course of negotiations, representatives of the Citizens Bank who were in position to know, represented or gave as their opinion that bad notes and securities carried as assets in the Citizens Bank would not exceed in the aggregate the sum of $40,000, but in order to satisfy officers and directors of the Pendleton Bank concerning that matter, its president and cashier were permitted to examine notes and securities held by the Citizens Bank. From their examination they concluded that bad or worthless paper held by the Citizens Bank would exceed the sum indicated, and when they so reported, the negotiations were for the time dropped. The proposal, however, was later renewed by parties interested in the Citizens Bank, and negotiations finally resulted in a contract approved by the directors of the respective banks, which, omitting signatures, reads:

"Agreement for the Merging of Pendleton Bank,

Falmouth, Ky., and Citizens Bank, Falmouth, Ky.

"This agreement made this the 22nd day of March, 1930, by and between Pendleton Bank, Falmouth, Ky., by C. H. Lee, Jr. President, and Chas. W. Thompson, Cashier, Party of the First Part, and Citizens Bank, Falmouth, Ky., By C. W. Carnes, President, and J. B. Woolery, Cashier, Party of the Second Part, Witnesseth:

"Subject to the provisions that this agreement shall not be binding upon either party hereto, until the terms and conditions herein set forth shall have been lawfully agreed upon by a majority of the Board of Directors of each Bank, ratified and confirmed by the affirmative vote of the stockholders of each Bank owning at least two-thirds of its outstanding Capital Stock, at a meeting to be held on the call of the respective Boards of Directors after publishing notices of the time, place and object of said meeting for two consecutive weeks in a newspaper of general circulation in Pendleton County, Ky., and after sending such notices to each stockholder of record of the respective banks by registered mail at least twenty days prior to said meeting, and further subject to the approval of the Banking Commissioner of the State of Kentucky, it is hereby agreed as follows: The party of the second part agrees to sell to the party of the first part, and the party of the first part agrees to buy of the party of the second part the property it now owns on the corner of Shelby and Chapel Streets in the City of Falmouth, Ky., in which the party of the second part now conducts business together with all the assets of said party of the second part consisting of notes, bonds, cash, and all property it may own whether described herein or not upon the following terms:

"First: The said party of the first part is to increase its Capital Stock from $50,500.00 to $83,000.00 and issue to the stockholders of the party of the second part one share of the par value of $50.00 per share, of its stock after said increase is made, for every two [2] shares held in party of the second part's Capital Stock.

"Second: The said party of the first part

agrees to hold in its reserve fund, after said stock is increased, the sum of, at least, $83,000.00.

"Third: The said party of the second part agrees that after all the obligations of theirs are paid out of the assets hereby sold to the party of the first part, that the remaining part of said assets must equal the sum in cash, exclusive of the real estate named herein, the sum of $45,000.00, and it is further agreed that said party of second part will execute to said party of the first part a bond with security satisfactory, to party of the first part, for the faithful performance of said agreement.

"Fourth: All notes or obligations due the party of the second part that are paid or renewed by new obligations and accepted by the party of the first part, shall release party of the second part from any further liability for their payment, and in the event all the obligations of the party of the second part owes to its creditors are paid then all liability on said bond ceases.

"Fifth: If the collection on the personal assets conveyed herein to the party of the first part are not paid in cash or by renewals accepted by the party of the first part by the 20th day of October, 1931, to the amount of all its obligations of the party of the second part to its creditors and the further sum of $45,000.00 then the bond herein mentioned shall be due, and the party of the second part shall pay to said party of the first part the amount said collections and renewals lack of amounting to said aggregate named in this clause.

"Sixth: The party of the first part agrees to amend its charter and provide for ten directors to be composed of the present directors of the party of the first part and three directors of the party of the second part, all of whom will hold said positions until the next regular election of directors by said party of the first part.

"Seventh: If the party of the second part and its sureties have to pay to the party of the first part any sum by reason of the collections and renewals named not being sufficient to pay all the obligations owing by said party of the second part together with the said sum of $45,000.00 named herein by the

20th day of October, 1931, the time named in said bond, and the party of the second part has fulfilled the obligation of this agreement, then it may out of the uncollected assets herein assigned and not collected or renewed as provided herein, have the right to· collect, if it can, the amount it had to pay under the terms of this agreement.

"Eighth: In estimating the amount ·obtained by the party of the first part on the personal assets sold to it herein, by payments or renewals the party of the second part will not receive any credit for the amount that is received for unearned interest on notes or obligations received by the party of the first part from the party of the second part from the date of this contract.

"Ninth: Pendleton Bank hereby designates C. H. Lee, Jr. and Chas. W. Thompson and Citizens Bank designates C. W. Carnes and J. B. Woolery as the Committees, to act for them respectively, in carrying out this agreement, with authority to do or cause to be done all things necessary or proper in· the performance thereof.

"Ratified and approved by the Board of Directors March 22, 1930."

The bond signed by appellees which was executed pursuant to the third clause of the contract and which is· the basis of this action omitting the signatures reads:

"We, the undersigned, hereby covenant with Pendleton Bank, Falmouth, Ky., that we will bind ourselves as sureties for the Citizens Bank, Falmouth, Ky., in consideration of the foregoing contract that said Citizens Bank will full comply with the terms of said contract as to payment of the sum named therein. In the event the personal assets of said Citizens Bank fails to discharge in cash or by renewals of notes due it an amount equal to all its obligations and the further sum of $45,000.00 and in default of its so doing we bind ourselves to pay same on the 20th day of October, 1931, as named in the foregoing contract."

"Done this 18th day of March 1930."

All steps required by section 555, Kentucky Statutes, for the consolidation of corporations were taken, but the agreement was not acknowledged as required by

section 556 of the statute; however, the charter of the Pendleton Bank was amended as provided in the agreement and in strict conformity with the provisions of the law relating to such matters.

On November 3, 1931, the Pendleton Bank was by resolution of the directors closed and was taken over by the banking commissioner of Kentucky for liquidation as provided by law. This litigation was initiated on January 1, 1932, when the Pendleton Bank and certain of its officers and directors filed their petition against the Citizens Bank, appellees, and the liquidating agent.

On March 31, 1932, appellants filed their original petition against appellees and thereafter the two actions were consolidated. On January 11, 1933, appellants filed an amended petition and we find counsel for respective parties in agreement that it will be unnecessary to discuss original pleadings or prior amendments, since this is in the nature of a substituted petition on which appellants base their cause of action. This pleading after setting out the foregoing facts and the terms and conditions of the contract and bond, alleged that the obligation of the Citizens Bank at the time its assets were transferred to and purchased by the Pendleton Bank amounted to $677,299.76; that the total amount realized from assets of the Citizens Bank and to which the Citizens Bank was entitled to credit under the agreement amounted to $248,417.12 or $418,882.64 less than the debts and obligations at the time of the transfer of its assets, and that appellees and each of them were liable to appellants for this sum and the additional $45,000 as provided in the bond and agreement, or a total of $463,-882.64, for which sum judgment was prayed.

In addition to a plea of coverture by a married woman who signed the bond, the answer traversed the allegations of the petition and set up a number of affirmative defenses and pleas which it will be unnecessary to enumerate or discuss, since in so far as pertinent they will be discussed in a consideration of questions raised by counsel for respective parties.

On motion of appellants, the judge to whom the case was submitted without intervention of a jury made a finding of facts and of law and also rendered a memorandum opinion which is found in the record. Since the court's finding of facts sets forth the essence of the per-

tinent evidence in the main we shall, for the sake of brevity, give in substance his finding rather than enter into a detailed recital of the volumes of evidence. He finds that on or about March 22, 1930, the agreement was entered into between the banks and signed by their respective directors. Between March 18 and March 22, 1930, J. B. Woolery, cashier, and a member of the board of directors of the Citizens Bank, circulated the bond, which had been prepared by an officer of the Pendleton Bank, among stockholders of the Citizens Bank and secured signatures of appellees whose names appear thereon, other than Grace T. M. Colvin, who did not sign the bond. All of the signers of the bond except John Colvin were stockholders of the Citizens Bank, and his wife was a stockholder. On or prior to March 2, 1930, this bond bearing the signatures as indicated was delivered to Charles Thompson, cashier, and a member of the board of directors of the Pendleton Bank, and approved by him on behalf of that bank. About March 26, 1930, registered letters were sent by the Citizens Bank to each of the stockholders explaining the agreement intended to be entered into between the banks and inclosing a copy of the agreement, a notice of a stockholders' meeting to be held on April 28, 1930, to vote upon an agreement and a proxy appointing C. W. Carnes and J. B. Woolery agents to vote their stock. The same procedure was followed by the Pendleton Bank except that the proxies designated Charles Thompson and C. H. Lee, Jr., as agents to vote their stock. The authorized and outstanding capital stock of the Citizens Bank was 1,300 shares and owners of 1,159 of its shares executed proxies authorizing their stock to be voted in favor of ratifying the agreement. The outstanding and authorized capital stock of the Pendleton Bank was 1,010 shares and owners of more than two-thirds thereof executed like proxies. Owners of 912 of the Citizens B·nk stock and owners of 719.7/12 shares of the Pendleton Bank stock in addition to the proxies, signed and sent in a paper authorizing the consolidation of the two banks "in accordance with the agreement entered into between the directors or agents of the bank on March 22, 1930." The banking department of Kentucky also approved the transaction. On April 19, 1930, the Pendleton Bank moved from its building into the building of the Citizens Bank and took possession of all its assets and property of every nature and immediately gave

credit on its books to all depositors of the Citizens Bank for the amount of their respective deposits and issued passbooks of the Pendleton Bank to them for such deposits. It also paid off all other debts and obligations of the Citizens Bank. Stockholders of the Citizens Bank, with the exception of a very few shares, surrendered their stock of the Citizens Bank to the Pendleton Bank and received in exchange therefor shares of the latter. During the period beginning April 28, 1930, and ending June 30, 1931, four dividends were declared and paid by the Pendleton Bank and dividends were accepted by each of the persons who were former stockholders of the Citizens Bank, including those who did not surrender their shares of stock in the Citizens Bank. The agreement introduced in evidence was not acknowledged and sworn to by the respective board of directors of the banks or either of such boards, nor was the agreement lodged for record in the county clerk's office of Pendleton county or with the secretary of state of Kentucky.

The court refused to make any finding as to whether J. B. Woolery was an agent of the Citizens Bank or the Pendleton Bank in securing signatures to the bond, or whether he made any misrepresentations to the signers of the bond in securing their signatures or concerning any other question of fact in issue, since he was of the opinion that the foregoing was sufficient to dispose of the cause.

From the foregoing facts the court concluded that all preliminary matters leading up to and including the signing of the bond contemplated a consolidation of the Pendleton Bank and the Citizens Bank and the signers of the bond had a right to rely upon a consolidation as provided for by the Statutes of Kentucky; and the banks having failed to comply with the Statutes of Kentucky with respect to the consolidation of corporations and having failed to legally consolidate, the signers of the bond should not be bound by the terms thereof, and this conclusion of law upon which the judgment is based is vigorously assailed by counsel for appellants.

A great deal of discussion is made concerning the nature of this transaction, that is, whether it was a sale, consolidation, or merger. While the petition does allege that the Citizens Bank sold its assets to the Pendleton

Bank, it further alleges the facts concerning the steps taken and the assent of the stockholders to the consolidation agreement. Regardless of all else that might be said concerning the nature of the transaction, the Citizens Bank was taken over by the Pendleton Bank, and as found by the lower court, the former ceased to do business on April 18, 1930. It is manifest that it was clearly understood by all the stockholders of the two institutions that they were to consolidate under the terms and conditions set forth in the agreement, a copy of which was mailed to each stockholder. All the persons who signed the bond except John Colvin were stockholders, and his wife, Grace T. M. Colvin, whose name he signed to the bond, was a stockholder. They were issued stock in the Citizens Bank; they were paid and received four dividends declared after the consolidation. It is therefore obvious from all these things that they knew and understood the purpose and effect of the transaction.

In the proven circumstances we are constrained to hold that appellees are not relieved of liability on the bond merely because of the failure to comply with the letter of the statute respecting the acknowledgment and recordation of the agreement, since they and all other parties concerned treated and acted upon the transaction as completed according to the terms of the agreement. Their liability is fixed by the contract and bond regardless of the nature of the transaction.

Counsel for appellees cite and rely on the cases of La Rue v. Bank of Columbus, 165 Ky. 669, 178 S. W. 1033 and Bank of Murray v. Farmers' Bank of Hazel, 257 Ky. 251, 77 S. W. (2d) 624, as supporting the finding that the sureties were released by failure to comply with the statute relative to consolidation of corporations.

In the former case it was held that no attempt was made to proceed under section 555 et seq., Kentucky Statutes, and there was no absorption of one corporation by the other, and that the Farmers Bank did not part with the ownership of its assets, nor did it cease to exist, but merely pledged a part of its assets to the Bank of Columbus to secure the latter under its agreement to pay depositors of the former.

In the latter case cited and relied on, the Bank of Hazel was seeking to recover a sum it had on deposit

with the Bank of Murray. The Bank of Murray pleaded a reorganization agreement whereby the deposit would be reduced 20 per cent. The Bank of Murray attempted reorganization under chapter 19, Acts of 1932, but was not in position to and had not complied with the provisions of the law respecting reorganization. It was held that in such circumstances a depositor who had not signed the agreement nor assented to the plan was not bound thereby, but was entitled to the full amount of the deposit. Here the situation is entirely different. One bank had absorbed the other, and appellees and all other stockholders had assented to, acquiesced in, and received benefits of the transaction, intended to be and complete in details except as above indicated. The cases cited are therefore easily distinguished.

Question is also made concerning the nature of appellees' liability, that is, whether it is one of suretyship or otherwise. Under the terms of the agreement they were sureties, and apart from the agreement, it is apparent that their obligation is in the nature of a suretyship.

In the proven circumstances it is apparent that appellees' plea of no consideration cannot be sustained. Where the relation of principal and surety exists and a consideration is given to the principal, no other consideration is necessary to bind the surety. Hughett v. Shain, 253 Ky. 330, 69 S. W. (2d) 688. Therefore, we are only called upon to determine whether as respects the Citizens Bank there was a consideration to support the contract. What we have already said concerning the condition of its affairs prior to the consolidation, coupled with later developments, as revealed by the record, is sufficient to show that fears on the part of the public as to its soundness and apprehensions on the part of its officers and directors that it would not be able to withstand the increasing stress of the times, were well founded. Apparently the Pendleton Bank was looked upon with more favor by the public as well as by those connected with the two banks. The Pendleton Bank not only insisted upon an examination of the assets of the Citizens Bank, but after the examination exacted the bond as a condition precedent to steps looking to consolidation. No such exactions of the Pendleton Bank were made by the Citizens Bank. Apart from a statement in the opinion of the lower court concerning what

appeared in other litigation and the fact that the Pendleton Bank was finally forced to close its doors, there is nothing directly or inferentially indicating it was insolvent at the time of the transaction or that there was any impairment of its capital or surplus. Therefore to all appearances it was a case of a stronger bank taking over a weaker one and assuming additional obligations far in excess of assets received, and which doubtless contributed in a large measure to the ultimate undoing of the consolidated institution.

A "valuable consideration" need not be a payment of money or of things of pecuniary value easily determinable by monetary standards; but it may the doing of something without legal obligation so to do, or refraining from doing something that might be legally done; or anything of benefit to one or of detriment, loss, or inconvenience to the other. Luigart v. Federal Parquetry Mfg. Co., 194 Ky. 213, 238 S. W. 758; Brady v. Equitable Trust Co., 178 Ky. 693, 199 S. W. 1082; McDevitt v. Stokes, 174 Ky. 515, 192 S. W. 681, L. R. A. 1917D, 1100; Cassinelli v. Stacy, 238 Ky. 827, 38 S. W. (2d) 980; Robbins v. Robbins et al., 246 Ky. 411, 55 S. W. (2d) 31. It may consist of anything of value, and it "may be the assumption of an obligation—the mere altering of the condition of the party to be affected." Snyder v. Snyder, 193 Ky. 233, 235 S. W. 743.

Relying upon their plea of fraud and the evidence to sustain it, counsel for appellees argue with earnestness and apparent confidence that at least some of the sureties on the bond are relieved of liability thereon because of the fraud practiced upon them by Mr. Woolery, who secured all the signatures thereto; and that the release of a portion of the sureties by operation of law effects the release of the remaining sureties.

Without detailing evidence on this point, it may be said that the evidence of a majority of the signers of the bond tends to sustain this plea; however, Mr. Woolery vigorously denied any misrepresentation, fraud, or improper conduct on his part in securing the signature of any of the parties. There is, however, a total absence of any showing of fraud or misrepresentation upon the part of the Pendleton Bank or any one connected with it in securing the signatures to the bond. Fraud practiced upon the surety by the principal and not by the payee or obligee will not affect the liability of the sure-

ty, and it is not the duty of the creditors to ascertain whether the surety has been misled by the principal. Sewell v. Breathitt Lodge, 150 Ky. 542, 150 S. W. 677; Wheeler v. Traders' Deposit Bank, 107 Ky. 653, 55 S. W. 552, 21 Ky. Law Rep. 1416, 49 L. R. A. 315; Cheatham v. Terrell, 198 Ky. 687, 249 S. W. 1018. However, appellees further contend that Woolery was the agent of the Pendleton Bank in securing the execution of the bond; and therefore the latter was liable for his acts and representations. But this contention is not borne out by the evidence—at most it is only made to appear that Mr. Thompson, cashier of Pendleton Bank, drafted the agreement and bond and delivered the documents to Woolery. In Deep v. Farmers' National Bank of Lebanon, 247 Ky. 801, 57 S. W. (2d) 1002, it was held that the bank, by delivering a note to the maker with request that he procure the surety to sign same, did not thereby constitute the maker the bank's agent. Comparison of the facts here with those of the Deep Case will show it to be conclusive. In this connection it may be said that the plea of coverture by a married woman who signed the bond is a complete defense to the cause of action as against her in view of section 2127, Kentucky Statutes. This much is conceded by counsel for appellants, if the bond is a contract of suretyship, and what we have already said disposes of that question. However, this did not operate to release other sureties. The rule contended for by appellees has no application where one of the sureties is released by operation of law. It has been held that the infancy of one surety on the bond does not, in the absence of fraud or misrepresentation, release other sureties. Wills v. Evans, 38 S. W. 1090, 18 Ky. Law Rep. 1067, and the same rule necessarily applies to the disability of coverture. The rule relied on by appellees only applies where one of the sureties is released by act of the creditor. Neither does the fact that the principal did not sign the bond alter or affect the liability of the sureties, since one may be bound as surety by a separate instrument or obligation, Abell v. Scott, 5 Ky. Op. 238, and a bond signed by a surety alone may be binding. United States F. & G. Co. v. Board of Education of City of Maysville, 228 Ky. 426, 15 S. W. (2d) 255.

Appellees further plead as an affirmative defense that the act of the two banks in entering into a consoli-

dation agreement was ultra vires because they assumed obligations in excess of the amount authorized by their charters. While it is apparent that this plea cannot be sustained, it is not necessary to enter into a discussion of that question, since appellees are not in position to complain, because they and all other stockholders of their bank and the Pendleton Bank signed and assented to the agrement and accepted benefits under it. Lincoln Court Realty Co. v. First National Bank, 187 Ky. 288, 219 S. W. 158; Darnell v. Equity Life Insurance Co.'s Receivers, 179 Ky. 465, 200 S. W. 967. It is a general rule that where an ultra vires contract is made and performed, a party will not be permitted to enjoy the benefits received and escape liability under a plea that the contract was ultra vires. Walker v. City of Richmond, 173 Ky. 26, 189 S. W. 1122, Ann. Cas. 1918E, 1084.

Finally it may be said that as held in Briggs et al. v. Wilson & Muir, 204 Ky. 135, 263 S. W. 740, a surety is primarily liable and the creditor has a right to proceed against the principal and surety, jointly or severally.

While surety contracts must be reasonably construed to effectuate the intention of the parties as manifested by the language employed, Union Indemnity Co. v. Pennsylvania Boiler Works, 246 Ky. 473, 55 S. W. (2d) 367, they will be construed by courts as only to impose upon gratuitous sureties burdens clearly within the terms of the contract (Vogt v. City of Louisville, 258 Ky. 36, 79 S. W. [2d] 359), and it is a rule of universal application that the beneficiaries of a contract, the performance of which is secured by a bond, must observe the express terms and obligations of the contract and refrain from doing anything which alters the position of the surety or his liability. American Surety Co. of New York v. Noe, 245 Ky. 42, 53 S. W. (2d) 178; New York Indemnity Co. v. Hurst, 252 Ky. 59, 66 S. W. (2d) 8, 94 A. L. R. 864.

With these rules in mind, and realizing the far-reaching consequences of this opinion to those most vitally concerned, we have given careful consideration to every phase of the case and find no escape from the conclusions reached.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.